## 77240. HARMON v. REAMES et al.

(374 SE2d 539)

McMurray, Presiding Judge.

Plaintiff brought this negligence suit against defendants in the Superior Court of Fulton County. It was alleged that defendants owned and operated a hotel and convention center and that they rented their convention facilities to various companies for conventions and shows; that on October 22, 1984, plaintiff came upon defendants' premises for the purpose of delivering and installing a display at a telecommunications convention; that, when he arrived at defendants' loading dock, plaintiff was directed by an employee of defendants to transport the display materials down an inclined ramp; that the display materials were boxed in wheeled crates; that as plaintiff rolled a crate down the ramp, the wheels struck "a clump of concrete on the ramp's surface," causing the crate to fall; and that the falling crate struck plaintiff in the face and severed his nose.

As to defendants' negligence, plaintiff alleged that the loading area and ramp of the hotel and convention center were maintained in a dangerous condition. In this regard, it was asserted that clumps of concrete were permitted by defendants to protrude above the surface of the ramp.

Defendants answered the complaint and denied they were liable to plaintiff. Thereafter, following discovery, defendants jointly moved for summary judgment. The trial court granted defendants' summary judgment motion and plaintiff appealed.

The evidence adduced below shows the following: Plaintiff was employed as a "leadman" by a company which installed and dismantled convention exhibits. In this capacity, plaintiff installed various exhibits at conventions throughout the country.

On October 22, 1984, plaintiff and a co-employee arrived at defendants' hotel and convention center to install a convention exhibit. Plaintiff had not been upon defendants' premises previously. Plaintiff and his co-worker were met by a truck driver who arrived in a van in which the display was transported.

The display materials were packaged in large wooden crates. The crates stood 5 feet tall and 4 feet wide and they weighed more than plaintiff (about 145 lbs.). Wheels were affixed to the bottom of them.

Plaintiff was instructed by one of defendants' employees that the crates would have to be moved down a ramp in order to gain access to the convention area. Plaintiff inspected the rampway area for about 10 to 15 minutes. Then, he began to roll the crates down the ramp.

Plaintiff could have asked his co-worker for assistance in moving the crates. He chose not to do so.

Plaintiff rolled the crates one at a time down the incline toward an access door. He stood in front of the crates, with his back to the

door as he eased each crate down. He did not notice any bumps or obstructions on the rampway.

Plaintiff moved two crates down the ramp without incident. It was the third crate which fell on plaintiff. As it was rolled down the ramp, plaintiff felt a "bump." In an instant, plaintiff's right foot was caught under a wheel and the crate toppled over, striking him on the face.

Plaintiff realized immediately that his nose had been severed. He was taken to the hospital where he underwent the first of many reconstructive surgeries.

Via deposition, plaintiff averred that he did not know what caused the crate to topple over. In this regard, he testified that he did not see what the wheel of the crate struck; that he did not see any hardened concrete on the ramp; and that the ramp "really didn't pose any problems as far as moving the crates" was concerned.

In opposition to defendants' motion for summary judgment, plaintiff submitted the affidavit of Victor Michiels, Jr., an architect. He averred that the grade of the ramp (approximately 9 percent) was "dangerous for use by pedestrians with a burden of any type." In a deposition, the architect averred that he first visited defendants' premises on October 15, 1986, nearly two years after plaintiff was injured; that generally the ramp was finished smoothly but there were irregular areas in which concrete droppings were allowed to harden; that the worst concrete dropping was approximately one inch high; that the concrete droppings were plainly visible; and that if plaintiff spent 10 to 15 minutes looking over the rampway, he probably could have seen the concrete droppings. The architect was unable to state, however, when the concrete droppings fell upon the rampway.

Plaintiff also submitted his own affidavit in opposition to defendants' summary judgment motion. Therein, he averred that the front wheel of the third crate struck an "obstruction" on the ramp which caused the crate to fall. *Held*:

Plaintiff admitted in his deposition that he did not know what caused the crate to topple over on him. Although he stated in his affidavit that the wheel of the crate hit an "obstruction," he deposed that he did not know what the wheel of the crate struck. Plaintiff averred that he did not see any hardened concrete in the area. He concluded by stating that the ramp did not pose any problem with regard to the moving of the crates. Thus, plaintiff was unable to identify just what caused the crate to fall. See *Kenny v. M & M Supermarket*, 183 Ga. App. 225 (358 SE2d 641).

Given this state of the record, we must conclude that the trial court properly granted defendants' motion for summary judgment. The mere fact that the crate toppled over on plaintiff does not establish fault on the part of defendants. " 'Our Supreme Court has held

that "proof of nothing more than the occurrence of the fall is insufficient to establish the proprietor's negligence." . . .' " *J. C. Penney Co. v. Smith*, 173 Ga. App. 612, 613 (327 SE2d 574). Accord *Roberts v. Gardens Svcs.*, 182 Ga. App. 573 (356 SE2d 669).

Based on the deposition testimony and affidavit of the architect, plaintiff would have us suppose that the wheel of the crate struck a hardened lump of concrete. The fallacy of this supposition is that the architect viewed the ramp nearly two years after the crate toppled over. He was unable to state whether the hardened concrete was present when plaintiff was injured. Moreover, the supposition is rebutted by the deposition testimony of plaintiff who averred he saw no hardened concrete patches on the rampway.

Plaintiff contends a genuine issue of material fact exists with regard to the dangerousness of the grade of the ramp. We disagree. Although the architect opined that the grade of the ramp was dangerous for a pedestrian with a burden, there is no evidence that the grade of the ramp caused the crate to topple over. As noted above, plaintiff did not know what caused the crate to fall. And he stated that the ramp itself did not pose any problems when it came to moving the crates.

Even if we were to conclude that a genuine issue of material fact exists as to whether defendants' negligence caused the third crate to fall, we must nevertheless affirm the grant of summary judgment to defendants. Plaintiff inspected the rampway for 10 to 15 minutes before he began rolling down the crates. He rolled two crates down the ramp before he descended with the third crate. Accordingly, plaintiff was well aware of the condition of the ramp and his knowledge was, or at least should have been, equal to that of defendants. (" 'An invitee is under an equal duty with the owner to use [his] sight to discover any defect or dangers. (Cits.)' [Cit.]" *Roberts v. Gardens Svcs.*, 182 Ga. App. 573, 574, supra.) Thus, it cannot be said that defendants possessed superior knowledge of the alleged danger. And, it follows, defendants cannot be held liable for plaintiff's injuries: " 'The basis of the proprietor's liability is his superior knowledge, and if his invitee knows of the condition or hazard there is no duty on the part of the proprietor to warn him and there is no liability for resulting injury because the invitee has as much knowledge as the proprietor does and then by voluntarily acting in view of his knowledge, assumes the risks and dangers incident to the known condition.' " *Rogers v. Atlanta Enterprises*, 89 Ga. App. 903, 906 (81 SE2d 721). Accord *Westall v. M & M Supermarkets*, 174 Ga. App. 155 (329 SE2d 237); *White v. Fred F. French Mgt. Co.*, 177 Ga. App. 661 (340 SE2d 276).

Plaintiff urges us to reverse the grant of summary judgment on the ground that he did not fully appreciate the risk of rolling the crates down the ramp. See generally *Atkinson v. Kirchoff Enter-*

*prises*, 181 Ga. App. 139 (351 SE2d 477). This we cannot do. The condition of the ramp, a "structural fixture," was "both obvious and static." *Atkinson*, supra at 140. Accordingly, any danger should have been discernible by plaintiff. See *Gyles, Inc. v. Turner*, 184 Ga. App. 376 (361 SE2d 538).

 *Judgment affirmed. Pope and Benham, JJ., concur.*

DECIDED SEPTEMBER 21, 1988 —
REHEARING DENIED OCTOBER 17, 1988 

*Sanford J. Gerber*, for appellant.
*Michael J. Rust*, for appellees.