A91A0559. HAIRE v. CITY OF MACON.
(409 SE2d 670)

SOGNIER, Chief Judge.

Clayton Monroe Haire brought suit against the City of Macon and Georgia 4-H Clubs Foundation, Inc. ("4-H Club") seeking damages for injuries he incurred when he slipped and fell at a 4-H Club hog show held at a facility owned by the City. Haire dismissed 4-H Club without prejudice. The trial court granted the City's motion for summary judgment, and Haire appeals.

We reverse. The evidence established that the show appellant was attending was held in a building constructed prior to 1900 which was being used as a show barn. It was appellant's first visit to the barn, and he had never before traversed the ramp on which he fell. It is uncontroverted that the ramp had been built more than 30 years before appellant's fall and had not been altered since 1959. The ramp, which filled the doorway connecting two buildings, was 12 feet wide, 15 inches at its highest point, and 67 inches long. The ramp was constructed of smooth surfaced concrete at a steep slope and had no handrail. There were no signs warning pedestrians about the ramp. Although the ramp was under a roof, at the time of appellant's fall it

had mud, water, and straw on it.

Appellant testified that the hog show was crowded with people and that he was walking six to twelve inches behind his mother. He stated that he was looking straight ahead when he saw his mother slip and then slipped himself on his first step on the ramp, although he did not know he was on a ramp until he was falling. Appellant testified that although the amount of mud and water was "usual" for a hog show, the mud and water on the ramp made it very slippery. He also testified that he knew he was in a barn and had to be careful. Appellant acknowledged that there was nothing in the area that distracted his attention.

It is uncontroverted that prior to appellant's accident, the City had received no notification that anyone had fallen or been injured in any way while using the ramp.

Appellant produced the affidavit of his expert witness, John Hutchinson, who averred that the ramp was a hazardous condition presenting an unreasonable and unacceptable risk of serious injury to persons using the ramp and that it constituted such a hazardous condition even without the presence thereon of mud, water, or other foreign substances. He gave four reasons: (1) the ramp's slope was too steep because it was a rise of one inch for every four and one half inches, and any slope greater than one inch for every eight inches was not safe for pedestrians; (2) the surface of the ramp was too smooth and slick for safe use by pedestrians; (3) the ramp had no handrails and being in excess of 88 inches wide should have had handrails on both sides and intermediate handrails; and (4) there were no markings or other signs to warn pedestrians that they were approaching a ramp. In his deposition, Hutchinson explained that he applied Southern Building Code standards promulgated in 1986 to the ramp and did not know what standards were in effect at the time the ramp was constructed. However, he testified that in his professional opinion, the ramp "was so out of the norm of ramps that you see in the '70s and the '80s and, now, in the '90s, . . . that I guess I was just — my gosh, I was just overwhelmed." In his opinion the ramp was so bad that he could easily see it as a cause of an accident and was "very surprised" when told there had been no other accidents.

Appellant contends the trial court erred by granting appellee's motion for summary judgment because genuine issues of material fact remain whether appellee was negligent in maintaining a ramp that was too steep, too smooth, and lacked handrails and warnings. Appellant bases his claim on common law negligence, having conceded in his brief that he has no negligence per se claim arising from the ramp's noncompliance with any building codes because the building was a legal noncomplying use and not in violation of any applicable statutory provision. See *Garnett v. Mathison*, 179 Ga. App. 242 (1)

(345 SE2d 919) (1986).

"For appellant to recover under a common law negligence theory, there must have been a defective condition on appell[ee]'s premises, which defect was the cause of appellant's fall and of which appellee had superior knowledge. [Cit.] The law is clear that the basis for an owner's liability for injury occurring to another while on the owner's property is the owner's superior knowledge of the danger or defect which was the proximate cause of the injury. The true ground of liability is the proprietor's *superior knowledge* of the perilous instrumentality and the danger therefrom to persons going upon the property. It is when the perilous instrumentality is *known to the owner* or occupant and *not known to the person injured* that a recovery is permitted." (Punctuation and citations omitted.) Id. at 242-243 (2). " '(A)n owner or occupier of land is liable to invitees for injuries they sustain as a result of his failure to warn them of dangers *which he was aware of, or in the exercise of reasonable care should have known*. (Cits.) However, a person is not expected to foresee and warn against dangers which are not reasonably expected, and which would not occur except under exceptional circumstances or from unexpected acts of the person injured. (Cit.)' . . . [Cit.]" *Zellers v. Theater of the Stars*, 171 Ga. App. 406, 407 (319 SE2d 553) (1984).

In *Zellers*, although the defendant had controlled an auditorium for six weeks a year for over 13 years, no one had ever been injured therein by plate glass breaking in the auditorium doors. Because of the lack of injuries, we held that the defendant had no actual knowledge that the doors of the auditorium, by containing plate glass rather than safety glass, were dangerous, id. at 407-408 (1), and that in the absence of injuries caused by the plate glass, there was no evidence to show or indicate that defendant had a duty to inspect the premises to discover and warn of the existence of the dangers of plate glass doors. Id. at 408 (2). However, " '[o]n motion for summary judgment the evidence is viewed in a light most favorable to the respondent, and the respondent is given the benefit of every doubt.' [Cit.] The movant has the burden to prove the non-existence of any genuine issue of material fact (OCGA § 9-11-56), and in so determining, the court will treat the respondent's paper with considerable indulgence. [Cit.]" *Mallard v. Jenkins*, 179 Ga. App. 582 (347 SE2d 339) (1986). Hutchinson testified that in his professional opinion the ramp was a hazardous condition, deviating so far from the established norm that it was "overwhelming" and that "absolutely" it could easily be seen as the cause of an accident. There is thus some evidence in the record from which it could reasonably be inferred that despite the absence of prior accidents, the ramp in issue was so obviously a defective condition that its danger was visible and should have been discovered by the exercise of ordinary care even without the type of inspection that

could distinguish plate glass from safety glass, as in *Zellers*, supra, or a slight deviation in the height of risers, as in *Chisholm v. Fulton Supply Co.*, 184 Ga. App. 378, 379 (361 SE2d 540) (1987), and accordingly was a danger appellee reasonably could have foreseen and expected.

" 'The Summary Judgment Act does not authorize the trial court to sit as both judge and jury, weighing the evidence and deciding issues that are traditionally for the jury. (Cit.) The sole function of the court on a motion for summary judgment is, rather, to determine whether there exists a genuine issue of material fact. (Cits.) In the instant case it is clear that such issues exist.' [Cit.]" *Collins v. Newman Machine Co.*, 190 Ga. App. 879, 884 (380 SE2d 314) (1989). Given the conflict between Hutchinson's testimony concerning the obviously hazardous condition of the ramp and the inferences to be drawn from the absence of prior accidents, a question of fact exists here whether the ramp was a defective condition which appellee, in the exercise of ordinary care in keeping its premises safe in the more than 30 years it has owned the premises, knew or should have known would cause injury to an invitee. OCGA § 51-3-1.

We have reviewed the evidence in the record regarding whether appellant's fall was due to a defect in the ramp itself or to the mud and water on the ramp and do not agree with appellee that the evidence so clearly established that appellant slipped only because of the mud and water that it was entitled to summary judgment as a matter of law. Likewise, in view of appellant's total lack of familiarity with the barn and his testimony regarding the severely crowded conditions in the building, we cannot agree with appellee that as a matter of law, the ramp was a patent defect or that appellant failed to exercise ordinary care on his own behalf. "Questions as to diligence and negligence, including contributory negligence, being questions peculiarly for the jury, the court will decline to solve them except in plain and indisputable cases. It was not incumbent upon appellant to exercise that degree of care which would have absolutely prevented his injuries." (Citations and punctuation omitted.) *Wall v. Southern R. Co.*, 196 Ga. App. 483, 485 (2) (396 SE2d 266) (1990).

*Judgment reversed. McMurray, P. J., Banke, P. J., Carley, Pope and Cooper, JJ., concur. Birdsong, P. J., Beasley and Andrews, JJ., dissent.*

ANDREWS, Judge, dissenting.

The majority correctly states that the true ground of the owner's liability to an invitee in slip and fall cases is the owner's superior knowledge of a condition or hazard that was the proximate cause of the invitee's injury. Thus, "if his invitee knows of the condition or hazard, there is no duty on the part of the proprietor to warn the

invitee and there is no liability for resulting injury because the invitee has as much knowledge as the proprietor does." (Citations and punctuation omitted.) *Froman v. George L. Smith &c. Auth.*, 197 Ga. App. 338, 339 (398 SE2d 413) (1990).

In the present case the alleged hazard was an inclined ramp which had existed unaltered on the premises for over 30 years. During that time there is no evidence that the City as owner had any notice of any fall or injury on the ramp prior to the present incident. In order to establish that the City had the necessary knowledge of a condition or hazard that caused his injury, appellant produced an expert witness who testified that the ramp, because of its steep slope, smooth surface, lack of handrails, and slippery condition at the time of the accident, constituted a patently obvious hazard of which the City was or should have been aware. Given that the appellant's own expert produced evidence that the ramp was an obvious defect or hazard, the appellant was in the position of having to explain why, by the exercise of ordinary care, he did not see it, and have as much knowledge of the patent hazard as the City.

Although appellant testified in his deposition that he slipped and fell because mud and water on the ramp made it slippery, he also stated that he did not see the ramp or any mud and water before he fell taking his first step onto the ramp. He explained that he was walking about six to twelve inches behind his mother in crowded conditions looking straight ahead, and that the people around him prevented him from seeing. He knew muddy conditions existed at the hog show requiring that he be careful in walking. As the majority notes, he also testified there were no "distractions" which diverted his attention.[1]

The majority concludes that because appellant was not familiar with the area, and was in crowded conditions, they cannot as a matter of law agree that the ramp was a patent defect, or that appellant failed to exercise ordinary care. There is no evidence tending to show that the ramp was anything other than a long-standing patently obvious and observable condition on the premises. In other words, it was a structural condition whose presence was both obvious, static and discernible to those exercising ordinary care. *Harmon v. Reames*, 188 Ga. App. 812, 815 (374 SE2d 539) (1988). This is not a latent defect case where the invitee claims that, despite his knowledge of the observable conditions, he could not fully appreciate the inherent danger. Compare *Atkinson v. Kirchoff Enterprises*, 181 Ga. App. 139 (351 SE2d

---

[1] Appellant does not suggest or rely upon the theory that a lesser degree of caution under the circumstances was sufficient to constitute ordinary care because he was distracted by somethign attributable to the proprietor. Compare, e.g., *Magee v. Federated Dept. Stores*, 187 Ga. App. 620 (371 SE2d 99) (1988).

477) (1986). Rather, appellant claims he was prevented from seeing the patent hazard because he was walking in a crowd.

I cannot agree with the majority that a question of fact remains as to whether appellant exercised ordinary care under these circumstances. Although an invitee is not required to inspect the premises to discover latent defects, nor even to observe every patent defect, neither is the owner an insurer of the invitee's safety, and "[t]he invitee must also exercise ordinary care for his own safety and must by the same degree of care avoid the effect of the owner or occupier's negligence when it becomes apparent to him, or in the exercise of ordinary care [he] should have learned of it." *Amear v. Hall*, 164 Ga. App. 163, 167 (296 SE2d 611) (1982); *Fowler v. Campbell*, 191 Ga. App. 872 (383 SE2d 163) (1989). Appellant cannot recover on the basis of the City's superior knowledge of the condition or hazard, if his lack of equal or superior knowledge was caused by his failure to exercise ordinary care to discover the condition or hazard. The exercise of ordinary care does not require an invitee to continuously scan the floor for possible defects, but depends on all the circumstances at the time and place. *Pinkney v. VMS Realty*, 189 Ga. App. 177, 178 (375 SE2d 90) (1988). Only when the facts are so plain and palpable that they demand a finding as a matter of law that one has failed to exercise ordinary care for one's own safety will summary judgment be appropriate. *Folks, Inc. v. Dobbs*, 181 Ga. App. 311, 312 (352 SE2d 212) (1986).

Here, appellant was in an unfamiliar area on a floor he knew to be muddy and slippery. Moving in a crowd of people, which, by his own admission, prevented him from seeing the floor in front of him, he nevertheless proceeded, and was looking straight forward when he stepped onto the ramp covered with mud and water, and fell. Proceeding blindly under these circumstances is, as a matter of law, failure to exercise ordinary care for one's own safety. Accordingly, I would affirm the trial court's grant of summary judgment to the City.

I am authorized to state that Presiding Judge Birdsong joins in this dissent.

DECIDED JULY 11, 1991 —
RECONSIDERATION DENIED JULY 30, 1991 —

*Adams & Hemingway, William P. Adams, Rentz & Shepard, Danny S. Shepard*, for appellant.
*Chambless, Higdon & Carson, Thomas F. Richardson, Robert E. Little*, for appellee.