A93A1047. VAN DYKE v. EMRO MARKETING COMPANY.
(440 SE2d 469)

POPE, Chief Judge.

Plaintiff/appellant Thomas Van Dyke slipped and fell in a puddle containing a mixture of kerosene and water at a Starvin Marvin convenience store owned by defendant/appellee. Plaintiff appeals from the trial court's grant of summary judgment in favor of defendant. Plaintiff argues that the trial court erred in granting summary judgment to the defendant because his knowledge of the hazard causing his fall was not equal or superior to defendant's knowledge. We agree.

This case is controlled by our decision in *Flood v. Camp Oil Co.*, 201 Ga. App. 451 (411 SE2d 348) (1991). In *Flood*, as here, the plaintiff slipped and fell at a self-service pump located at a convenience store operated by the defendant. The plaintiffs in both cases observed an "oily" spot and later slipped and fell. In *Flood*, the defendant had *constructive* knowledge that diesel fuel was on the pavement because defendant had knowledge that one of the pumps would leak diesel fuel occasionally. We held "[a] jury could conclude that the alleged hazard from a leaking diesel fuel pump on wet pavement was greater than the general hazard perceived by plaintiff." Id. at 452.

In this case the defendant had *actual* knowledge of the hazard causing plaintiff's fall. The evidence in this case demands a finding that defendant had superior knowledge of the hazard in question. Plaintiff testified that when he reported his fall to the attendant on

duty, she told him, "I thought somebody was going to fall out there, because I saw the man when he did it and he was filling up his kerosene jug and spilled it down where the water hose was, and those two mixtures is some kind of combination, its just like wet ice." Plaintiff further testified the attendant told him she did not have time to remove the hazardous mixture. Defendant did not refute plaintiff's testimony in this regard.

Although plaintiff had some knowledge of the hazard causing his fall, his knowledge was not equal to or greater than defendant's. He testified that he first saw the wet spot before he went inside the store to pay for his gas and fell after he returned to the pump. He described the spot as being darker than it would be if it were just water and looking "oily." Although plaintiff may have suspected the substance which appeared oily was kerosene because it was floating on top of water in the area where he fell, he did not know the substance was kerosene, as defendant did, until he fell and got kerosene on his shirt. Also, there is no evidence that plaintiff knew the combination of water and kerosene was extremely slippery, as defendant knew.

*Judgment reversed. McMurray, P. J., concurs and also concurs specially. Beasley, P. J., and Cooper, J., concur. Blackburn, J., concurs specially. Birdsong, P. J., Andrews, Johnson and Smith, JJ., dissent.*

BLACKBURN, Judge, concurring specially.

Although I generally concur with the majority opinion that summary judgment for the defendant was improper, some additional comments may be appropriate.

In this case, *the defendant's* superior knowledge of the hazard in question actually appears to be unrefuted. Specifically, after the plaintiff fell, the attendant on duty admitted knowing that an earlier customer had spilled kerosene where the water hose was, and that the combination of kerosene and water was like "wet ice." Further, although she feared that somebody would slip and fall on the mixture, she did not have time to clean it up. Compared to that attendant's informed knowledge of the particularly slippery substance, and fear of the specific danger it presented to the station's patrons, was the plaintiff's awareness of a wet spot that looked "oily."

In *Flood v. Camp Oil Co.*, 201 Ga. App. 451 (411 SE2d 348) (1991), where the attendant's constructive knowledge of the mixture of diesel fuel and rain water on the pavement was compared to the plaintiff's awareness of wet pavement due to the rain, this court found that a jury question existed as to whether the plaintiff's knowledge of the hazard was equal to or greater than the defendant's. *Flood* is so similar to the instant case as to be indistinguishable.

In my view, the attendant's specific knowledge of the especially

slippery mixture of kerosene and water on the pavement near the fuel pumps, her awareness of the risk it presented to customers, along with her deliberately subjecting patrons to that risk by not taking the time to clean up the substance, comes close to the "clear and convincing evidence" of an entire want of care that raises a presumption of conscious indifference to consequences sufficient to authorize imposition of punitive damages under OCGA § 51-12-5.1. At the minimum, however, when compared to the plaintiff's knowledge in this case, it certainly cannot be said as a matter of law to be equal to or less than the plaintiff's knowledge of the hazard. For that reason, summary judgment for the defendant was improper.

I am authorized to state that Presiding Judge McMurray joins in this special concurrence.

BIRDSONG, Presiding Judge, dissenting.

Appellant/plaintiff Thomas Van Dyke slipped and fell in a puddle or wet spot containing a mixture of kerosene and water at a convenience store owned by appellee. The majority has concluded that the trial court erred in granting summary judgment to appellee because appellant's knowledge of the hazard causing his fall was not equal to or superior to defendant's knowledge. I disagree with both the analysis and the conclusion of the majority.

Appellant testified in his deposition that he did not see the wet spot in question when he got out of his car, but first saw it when he went to take the cap off his gas tank. However, he had testified previously that he "kind of saw it when [he first] got out." No reasonable explanation was offered for this contradicting testimony; accordingly, the rule of *Prophecy Corp. v. Charles Rossignol, Inc.*, 256 Ga. 27 (343 SE2d 680) applies. Thus, on summary judgment, this court is required to conclude that appellant saw the wet spot when he got out of his car.

Further, as appellant removed his gas cap, he again observed "the wet spot and the puddle" but did not think anything about it. He thereafter went to the station attendant and paid for his gas; upon his return, he fell as he stepped to the pump to get the pump nozzle. There was nothing blocking his vision of the pavement at that time, nor was there any physical activity or object distracting him; he had his mind on what he was doing and he "wasn't looking anywhere else but where [he] was reaching." He "just glanced at the wet spot and continued to do what [he] was going to do." Appellant did not notice how wet the spot was, although he noticed the discoloration. The spot *"looked like an oily spot"*; it was "much darker" than normal concrete. (Emphasis supplied.) The spot was about 40 inches long and 20 inches wide. Appellant further testified, exhibiting a specific knowledge, that "water doesn't penetrate concrete like oil, grease, or ker-

osene"; *"the kerosene was on top of the water, and made the kerosene floatable."* (Emphasis supplied.) The substance that he saw on top of the water was *"oily."* (Emphasis supplied.)

*Flood v. Camp Oil Co.*, 201 Ga. App. 451 (411 SE2d 348) is distinguishable. In *Flood* the plaintiff was merely aware of the usual oily appearance of standing water at a gas station and was attempting to walk carefully when she fell; here the appellant/plaintiff was aware that the substance on top of the water was oily, and that the discoloration caused thereby was "much darker" than normal concrete. He also was aware kerosene floats on water and that water will not soak into concrete like oil, grease, or kerosene. It thus appears, without refutation by other evidence of record, that appellant had or should have had an informed knowledge of both the nature and location of the oily substance before he fell in it. Moreover, appellant made an admission in his deposition that at the time he fell he was not watching where he was stepping but was only looking where he was reaching, that is, looking toward the gas nozzle.

The basis of a proprietor's liability is not whether he has actual knowledge of the condition or hazard, but whether he has superior knowledge to the invitee; "and if his invitee knows of the condition or hazard, there is no duty on the part of the proprietor to warn the invitee and there is no liability for resulting injury because the invitee has as much knowledge as the proprietor does." (Punctuation omitted.) *Hobson v. Kroger Co.*, 204 Ga. App. 417, 419 (419 SE2d 492); accord *O'Brien v. Fairfield Communities*, 204 Ga. App. 543 (1) (421 SE2d 723). "This case presents . . . the type of situation . . . where the condition is known equally to the invitee and the host and therefore the invitee must anticipate the danger and avoid it with ordinary care." (Citations, punctuation and emphasis omitted.) Id. at 544 (1). The equal knowledge rule applies here; appellant is precluded from recovering because of that knowledge.

Also, "when a person has successfully negotiated an alleged dangerous condition on a previous occasion, that person is presumed to have knowledge of it and cannot recover for a subsequent injury resulting therefrom." (Punctuation omitted.) *Hudson v. Quisc, Inc.*, 205 Ga. App. 840, 841 (424 SE2d 37). "It is clear [appellant] had actual knowledge of the condition of [the oily cement] in the vicinity in which she . . . fell." Id. Moreover, regarding the existing condition of which appellant had actual knowledge, we wish to clarify that the issue is *not* knowledge of the *source* of the water and/or petroleum product nor is it knowledge of the *degree of slickness* of any particular puddle; rather, the issue is knowledge of the *existence* of that oily puddle, which is claimed to have caused appellant's fall.

Additionally, examination of *Flood*, supra, reveals that were it not factually distinguishable, it would have to be overruled. *Flood* ap-

plied a legal analysis contrary to the holding of the Supreme Court of Georgia in *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474), and thereby erroneously placed the burden on movant/defendant to "negate" plaintiff's theory of liability " 'by presenting evidence that it had in fact exercised reasonable care in inspecting the premises' " (*Flood*, supra at 453). In *Lau's Corp.*, supra at 491, it was held: "A defendant who will not bear the burden of proof at trial need not *affirmatively disprove* the nonmoving party's case; instead, the burden on the moving party may be discharged by pointing out by reference to the affidavits, depositions and other documents in the record that there is an *absence of evidence* to support the nonmoving party's case. If the moving party discharges this burden, the nonmoving party cannot rest on its pleadings, but rather must point to specific evidence giving rise to a triable issue." (Emphasis supplied.)

The majority correctly concludes that the appellee/defendant was charged with *actual* knowledge of the slippery spot by virtue of the prior visual observation of that spot and knowledge of its cause by its employee. However, this merely is the first prong of the required judicial inquiry. In *Alterman Foods v. Ligon*, 246 Ga. 620, 623 (272 SE2d 327), it was held: "[I]n order to state a cause of action in a case where the plaintiff alleges that due to an act of negligence by the defendant he slipped and fell on a foreign substance . . . the plaintiff *must show* (1) that the defendant had actual or constructive knowledge of the foreign substance *and* (2) that the plaintiff was *without knowledge of the substance* or for some reason attributable to the defendant was prevented from discovering the foreign substance." (Emphasis supplied.) Under *Lau's*, supra, the movant/defendant was not required to disprove these issues affirmatively, and to the extent that *Flood*, supra, implies that a pre-*Lau's* test should be used to place such a burden on appellant/defendant, it should no longer be followed. But even more compelling is the long-standing precedent of this court construing the requisite elements for liability in a foreign substance case as set forth in *Alterman Foods*, supra. Thus, in *Rush v. Food Giant*, 183 Ga. App. 388, 391 (1) (358 SE2d 919), this court, citing *Alterman Foods*, supra at 623, reaffirmed that: " '(N)ot only must the plaintiff show that the defendant had knowledge of the presence of the foreign substance, but the plaintiff must also show that he was without knowledge of its presence. The customer must exercise ordinary care for his own safety, and must by the same degree of care avoid the effect of the merchant's negligence after it becomes apparent to him *or* in the exercise of ordinary care *he should have learned of it*. He must make use of all of his senses in a reasonable measure amounting to ordinary care in *discovering and avoiding* those things that might cause hurt to him.' " (Emphasis supplied.) Accord *Bowman v. Richardson*, 176 Ga. App. 864 (338 SE2d 297) (plaintiff must

show that he also was without knowledge of the foreign substance to recover from a slip and fall resulting from a " ' "foreign substance," ' such as water on a ramp"); *Brownlow v. Six Flags &c.*, 172 Ga. App. 242 (322 SE2d 548) (trial court did not err in granting summary judgment where, although plaintiff asserted she had no actual knowledge that the ramp was wet until after her fall, she was aware of the general prevailing wet conditions in the vicinity of the raft ride and everyone knows that a damp floor is likely to be a little more slippery than a dry floor; thus, plaintiff was not in the exercise of due care for her own safety). Appellant/plaintiff in the case at bar has admitted in judicio not only his knowledge of the existence of a foreign substance on the concrete but also his knowledge of its "oily" appearance; thus, appellant clearly failed to satisfy the second prong of the *Alterman Foods* foreign substance test. As to the second prong, the controlling question is not whether a plaintiff has knowledge of the precise cause or nature of the danger, but whether plaintiff knew or should have learned through the exercise of ordinary care of the presence of this (oily) foreign substance (and, per force, his knowledge of the failure of the defendant to clean it up); when that is shown, as a matter of law, the plaintiff cannot recover notwithstanding the actual knowledge and negligence of the defendant, because of plaintiff's want of ordinary care for his own safety in failing to avoid the danger which an ordinary prudent person in like or similar circumstances would have perceived and avoided.

Appellant/plaintiff admitted he was aware of the oily substance and, under the precedent of *Alterman Foods*, supra, he should have used ordinary car to *avoid* it. Accordingly, I believe the majority erroneously has concluded that the trial court erred in granting appellee/defendant summary judgment.

I respectfully dissent. I am authorized to state that Judge Andrews, Judge Johnson and Judge Smith join in this dissent.

DECIDED DECEMBER 20, 1993 —
RECONSIDERATION DENIED JANUARY 27, 1994 —

*Brown, Phillips & Scoccimaro, Jimmie H. Brown,* for appellant.
*Watson, Spence, Lowe & Chambless, David Martyn, Kelley O. Boswell,* for appellee.