### 47223.   GRAY v. DELTA AIR LINES, INC. et al.

Clark, Judge. Plaintiff was injured when she stumbled and fell at the Delta Air Lines ticket counter in the City of Atlanta Airport Terminal. She sued both Delta and the municipality as its landlord jointly, and appeals from the grant of summary judgment to the defendants.

Along with other air lines, Delta leases terminal space in the Atlanta airport in which it has installed a built-in block of ticket counters as a homogenous straight-line unit composed of two counters, a luggage pass-through, two more counters, etc. The entire unit is bound together by a seven-inch-high continuous metal base at floor level,

and the counter backs and luggage scales are marked by narrow vertical metal bands. Each luggage pass-through is open at both ends so that luggage may be placed on the platform by the incoming passenger, weighed, and removed by the ticket seller behind the counter. It conforms to the format used generally throughout the building. No part of it obtrudes into passenger standing space. The luggage platforms are of the same depth as the ticket counters, about two feet.

The City of Atlanta is the owner of the Hartsfield International Airport Terminal Building. Under the pertinent portions of its lease with Delta, the area occupied by Delta's ticket counters and baggage racks was completely under the control and domination of the tenant, even to the extent of the tenant owning, erecting, and controlling the continuum which constituted the ticket selling and luggage platform area.

From the petition and the plaintiff's affidavit and depositions it appears that she and her niece approached the ticket counter so that the niece could purchase tickets from Delta with a check made out by the plaintiff; that the attendant motioned the plaintiff to move up closer because he could not read her identification, and when she did so her foot hit the metal base of the adjoining luggage pass-through, throwing her off balance so that she fell and was injured.

Summary judgments were granted both defendants and plaintiff appeals.

1. Although the appellant argues that the lobby area surrounding the ticket counter was under the control of the defendant City of Atlanta and comes within the word "approaches" under the terms of *Code* § 105-401 the lobby had nothing to do with the plaintiff's fall. Since the baggage platform was erected by Delta and owned by Delta with right of removal at termination of the lease, the case comes within the doctrine stated in *Horton v. Ammons,* 125 Ga. App. 69 (1) (186 SE2d 469) that "Where the lessee has exclusive control of the premises,

the lessor has no duty to inspect or any liability for defective construction or installation not made under his direction. *Scarboro Enterprises v. Hirsh,* 119 Ga. App. 866 (169 SE2d 182); *National Distributing Co. v. Ga. Industrial Realty Co.,* 106 Ga. App. 475 (127 SE2d 303); *Dobbs v. Noble,* 55 Ga. App. 201 (189 SE 694)." Accordingly *Rothberg v. Bradley,* 85 Ga. App. 477 (69 SE2d 293), relied upon by plaintiff, is not applicable.

Furthermore, another reason for exonerating the City of Atlanta exists in the controlling case of *City of Atlanta v. Ransom,* 115 Ga. App. 720 (155 SE2d 687), in which the facts are identical to those before the court. As is stated in the City's brief, "[W]hatever hazard confronted the appellant was at the dividing line between the portion of the lobby floor occupied and controlled by Delta and was physically situated on the portion occupied and controlled by Delta. The abrupt change in the elevation of seven inches between the lobby floor and the top of the luggage pass-through was created by a structure owned, controlled and maintained exclusively by Delta." Accordingly, the trial court properly granted summary judgment in favor of this defendant.

2. The record as to Delta Air Lines, Inc., however, presents a different picture, and closely resembles the situation in *Hightower v. City Council of Augusta,* 124 Ga. App. 537 (184 SE2d 678), where this court ruled that a jury issue existed. *Hightower* was a slip-and-fall case in an airport lobby, the facts involving a fall "on the slick hard floor in a puddle of water which had been allowed to accumulate within a radius of several feet from the umbrella rack." Among the grounds of negligence alleged were that defendant air line was negligent as follows: "(1) In providing a receptacle for its umbrellas which allowed water to drain therefrom and onto the floor of said terminal; (2) in negligently maintaining its umbrella rack in such a position and location as to allow water to drain from the wet umbrellas through said rack and onto the floor of said terminal." This court pointed out that under

notice pleading a complaint must be construed in the light most favorable to the plaintiff and with all points of doubt resolved in his favor even though unfavorable constructions are possible. In the case sub judice we are dealing with a summary judgment where the rules binding upon this court are even more stringent and onerous upon the defendant.

*Sanfrantello v. Sears, Roebuck & Co.,* 118 Ga. App. 205, 206 (163 SE2d 256) says: "On motion for summary judgment, the movant has the burden of showing the absence of any genuine issue of material fact, and the opposing party is given the benefit of all reasonable doubts and all favorable inferences that may be drawn from the evidence. *Holland v. Sanfax Corp.,* 106 Ga. App. 1, 4 (126 SE2d 442); *International Brotherhood v. Newman,* 116 Ga. App. 590, 592 (158 SE2d 298). The movant 'has this burden even as to issues upon which the opposing party would have the trial burden. And the moving party's papers are carefully scrutinized, while the opposing party's papers, if any, are treated with considerable indulgence.' *Colonial Stores, Inc. v. Turner,* 117 Ga. App. 331, 333 (160 SE2d 672); 6 Moore's Federal Practice (2d Ed.) 2853, § 56.23."

*Burnette Ford, Inc. v. Hayes,* 227 Ga. 551 (181 SE2d 866) rules in reply to a certified question from this court that where a party upon whom the burden of proof upon the trial of the case does not lie, makes a motion for summary judgment, all of the evidence adduced on said motion, including the testimony of the party opposing the motion, is construed most strongly against the movant.

*Pitch'n Putt, Inc. v. Atcheson,* 123 Ga. App. 200 (180 SE2d 246) quotes with approval at page 201 from *Chastain v. Atlanta Gas Light Co.,* 122 Ga. App. 90 (3) (176 SE2d 487): "This court has repeatedly held, and particularly in negligence cases, that it is permissible to grant a motion for summary judgment only when there is no genuine issue of material fact, and the moving party is entitled to a judgment as a matter of law. See *Holland v. Sanfax*

*Corp.*, 106 Ga. App. 1, 4 (126 SE2d 442); *Malcom v. Malcolm,* 112 Ga. App. 151 [144 SE2d 188]. The burden to establish the lack of a genuine issue of fact and the right to a judgment as a matter of law is upon the moving party, and any and all reasonable doubts as to the existence of such issue are resolved against the movant, with the trial court giving the party opposing the motion 'the benefit of all favorable inferences that may be drawn from the evidence.' *Holland v. Sanfax Corp.,* supra. Thus, in negligence cases, it must be plainly and palpably shown that the defendants in no way contributed to the proximate cause of· the damages incurred in order for the trial court to sustain a motion for summary judgment in their favor."

"The burden is upon the movant to show no genuine issue as to any material fact, and the opposing party is given the benefit of all favorable inferences that may be drawn from the evidence. [Cits.]" *Candler General Hospital v. Purvis,* 123 Ga. App. 334 (1) (181 SE2d 77).

Upon applying these directives to the record, it is submitted a jury issue is created in a number of matters but specifically in these portions of plaintiff's counter affidavit: "Neither defendant gave plaintiff any warning that, when she was invited by the ticket agent to move in closer so he could see her papers or whatever he wanted to observe, she would be tripped up by an obstruction which was too high for the foot normally to glide over, and too low to hold up a person and also too low to be caught by the eye or to be noticed as a danger and an obstruction to safe passage at that particular point and under the circumstances in which defendants were using their lobby arrangement." (R. p. 268)

Additionally, this counter affidavit rebuts the contention as to her contributory negligence by this language: ". . . [T]he floor at the counter was beige, the floor on which the counter stood . . . was walnut, so that they harmonized and blended but did not form a striking pattern to catch the eye, and this further constituted an unsafe

condition at a point where a passenger is invited in at a time when the head and eye of that passenger are both partly above and over the counter and not in a position to see or observe meaningfully the dangerous foot obstruction only 7 inches in height and in perfect position to trip and cause a fall to the passenger whose attention is naturally being devoted to her ticket business. Plaintiff could not and did not see nor was she aware of the danger and the obstruction under the circumstances." (R. p. 268)

Furthermore, in her testimony under cross examination we find that although she had been in the terminal building on previous occasions she had never been to the ticket terminal (R. p. 109) and the following pertinent portions: "And when he asked me to come closer so he could read the identification, I was looking at him, paying attention to what he said, when I moved around to come closer, I didn't get closer, I went over my head." (R. p. 110). "Well, my niece was here and the ticket agent was over there, and I was standing out here, and he said to me, he said, 'Ma'am, I will have to have identification before I can accept the check.' And I walked up here, and he said, 'I am sorry but I can't see it, would you come forward, bring it a little closer, please?' And when I went to come a little closer, I hit that and over I went right at his feet." (R. p. 111). "Q. This was before you hit the obstacle, did anything distract you? A. No, I wasn't even considering anything. I wasn't looking. I was looking at him to hear what he said, only he distracted me. He called me to him, that's the only thing that I would say I paid attention to. I wasn't concerned other than to comply with his request, and I went forward with the identification and that is it. But, he didn't get the identification off of there, I don't reckon he did, because I fell, I hit the floor." (R. pp. 144, 145).

From the foregoing it is evident that the question of "distraction" is an important evidentiary factor in deciding whether the record here discloses that the question of

plaintiff's exercise of ordinary care is for the jury to determine. In *Redding v. Sinclair Refining Co.,* 105 Ga. App. 375 (124 SE2d 688) we find a most interesting discussion with numerous citations. There at p. 379 the court concluded: "Where the distraction is self-induced the plaintiff can no more take the benefit of it to excuse his lack of care for his own safety than one who creates an emergency can excuse himself because of its existence. Where the distraction comes from without, and is of such nature as naturally to divert the plaintiff, and also of such nature that the defendant might naturally have anticipated it, the result is different. *Glover v. City Council of Augusta,* 83 Ga. App. 314 [63 SE2d 422]."

In *J. C. Penney Co. v. Knight,* 119 Ga. App. 70 (166 SE2d 434) the distraction was caused by an employee wishing "Merry Christmas" to the customer and was momentary in nature but sufficient to cause this court to rule that it was for the jury to determine if plaintiff was guilty of such negligence as would bar a recovery where she fell over a large object. In *Butts v. Academy of Beauty, Inc.,* 117 Ga. App. 222 (160 SE2d 222) the distraction consisted of a call from an employee with reference to another beauty shop appointment, which was ruled sufficient diversion to withstand a general demurrer based upon a fall from an upper level to a lower level of six inches. In *Kroger Co. v. Anderson,* 110 Ga. App. 686 (140 SE2d 108) the plaintiff's attention was deflected by a merchandise display adjacent to the aisle so that she did not observe the obstruction in the walkway.

In *Mason v. Frankel,* 49 Ga. App. 145 (174 SE 546), the distraction consisted of "varicolored and attractive signs in defendant's window, placed there by said defendant for the purpose of attracting attention" so that plaintiff failed to see a small two-wheeled truck over which she stumbled.

As was well said in *Glover v. City Council of Augusta,* 83 Ga. App. 314, 316, supra; "One is not bound to the same degree of care in discovering or apprehending danger

in moments of stress or excitement or when the attention has been necessarily diverted as at other times."

The rationale of these cases lies in the rule that, where a proprietor owes a duty to its invitees to keep the premises in a safe condition for their passage, the setting up of a distraction, by sign or conduct, which will so divert the customer's attention as to be the proximate cause of his injury in colliding with what might otherwise be a patent and even safe appurtenance, may constitute actionable negligence on the part of the defendant.

We have here an analogous situation to these cases with the Delta Air Line ticket agent having created the distraction in asking plaintiff to present her identification and thereafter in directing her to come closer. Whether he should have called the seven-inch high obstruction to plaintiff's attention and whether plaintiff exercised the required ordinary care for her own safety are questions for determination by the jury. This view is supported by three slip-and-fall cases determined upon summary judgment motions, these being *Colonial Stores v. Donovan,* 115 Ga. App. 330 (154 SE2d 659); *Blair v. Rayburn,* 120 Ga. App. 57 (169 SE2d 679) and *Hanchey v. Hart,* 120 Ga. App. 677 (171 SE2d 918), cited by this court in *Pitch'n Putt, Inc. v. Atcheson,* 123 Ga. App. 200, supra, wherein we concluded at p. 202 that "whether the invitee could have avoided injury in the exercise of ordinary care, or whether both were negligent in some degree, as the proximate cause of an injury, or the absence of any negligence, are questions for jury determination."

The facts here bring this case within the doctrine that "one of the best established rules in Georgia is that negligence is a question for the jury including lack of negligence, diligence, lack of diligence, extraordinary diligence and slight care. [Cits.]." *Boggs v. Griffeth Bros. Tire Co.,* 125 Ga. App. 304 (2) (187 SE2d 915).

3. The trial court did not err in granting Delta's motion to

strike the allegation contained in paragraph 9 of the plaintiff's complaint which asserted that "Delta sent her at its expense" to South Fulton Hospital. Plaintiff's attorney, a sapient savant known for his alliterative allusions, urges this to be an "exegetic element" which should stay in the case as an illumination of Delta's liability and that the striking thereof deprives her of "a tacit confession of responsibility for her injury." We disagree and believe it better to promote humanitarianism. This type of activity constituting a voluntary offer of assistance made on the impulse of benevolence or sympathy should be encouraged and should not be considered as an admission of liability. 31A CJS 742, § 291; 2 Wigmore (3d Ed.) p. 159, § 283a.

Georgia cases accepting the Biblical direction to "do unto others as you would have them do unto you," with recognition that such altruistic acts do not constitute an admission of liability but are made in the spirit of God's Grace, are *Dougherty v. Woodward,* 21 Ga. App. 427, 430 (94 SE 636) and *Rape v. Barker,* 25 Ga. App. 362 (103 SE 171).

4. The trial court did not err in sustaining Delta's objections to plaintiff's interrogatories which sought from Delta the fact that Delta's ticket counter arrangement in Montgomery, Alabama, made use of a metal bar erected 2½ feet above the floor in its ticket counter baggage opening which plaintiff described as being a "safety bar."

In *Underwood v. Atlanta & W. P. R. Co.,* 105 Ga. App. 340 (5) (124 SE2d 758) the plaintiff sought to establish the kind of warning device used in grade crossings other than that at the location involved. This court correctly held that "Evidence of conditions at places other than the one in question is not admissible to show whether a condition at the place in question is dangerous, in the absence of other facts and circumstances establishing relevancy."

It follows that the trial court erred in granting Delta's motion for summary judgment.

*Judgment affirmed as to the City of Atlanta; reversed as to Delta Air Lines, Inc. Eberhardt, P. J., and Deen, J., concur.*

ARGUED MAY 24, 1972—DECIDED SEPTEMBER 6, 1972.

*Hugh G. Head, Jr.,* for appellant.

*Powell, Goldstein, Frazer & Murphy, Edward E. Dorsey, D. N. Love, Henry L. Bowden, Ralph H. Witt,* for appellees.