A95A1547. McDONALD'S RESTAURANTS OF GEORGIA, INC. v. BANKS.
(466 SE2d 240)

McMURRAY, Presiding Judge.

Margaret Banks brought an action against McDonald's Restaurants of Georgia, Inc. ("McDonald's") for injuries she allegedly sustained when she slipped and fell in a pool of rainwater that had accumulated at the bottom of a floor-slope inside a McDonald's restaurant. McDonald's denied the material allegations of the com-

plaint and filed a motion for summary judgment.

Banks testified (in her deposition) that the area where she fell was not just wet from rain that had been tracked into the restaurant. She explained that the hazard was a "standing" pool of water (four feet wide) at the base of a five-foot incline that sloped from the restaurant's doorway. Banks deposed that "[t]here was no mat on the floor or other object of any sort to divert traffic around the puddle[,]" and that she did not see the hazard because she was "focused upon ordering at the counter which was directly ahead as well as [dodging] other customers who were coming toward the door to exit."

Struggling over apparently conflicting decisions from this Court in slip and fall cases, the trial court (in a detailed order) applied the old maxim that the non-moving party is entitled to the benefit of all favorable inferences on summary judgment and found "that there are jury issues present [as to] whether or not the Plaintiff exercised reasonable care for her own safety and whether or not she was distracted by foot traffic leaving Defendant's premises." This interlocutory appeal followed the trial court's order denying McDonald's motion for summary judgment. *Held*:

To withstand summary judgment in a slip and fall case due to a foreign substance on the floor, the circumstances must show (1) that the proprietor had actual or constructive knowledge of the hazard, and (2) that the plaintiff was without equal knowledge of the hazard. *Alterman Foods v. Ligon*, 246 Ga. 620, 623 (272 SE2d 327). In the case sub judice, Banks deposed that McDonald's manager admitted to her after the fall that "he was aware of the area's propensity to collect and hold water." This evidence alone would authorize a finding that McDonald's had constructive knowledge of the water hazard that purportedly caused Banks to fall. See *Hardin v. Super Discount Market*, 205 Ga. App. 646, 647 (423 SE2d 18). Consequently, the controlling issue is whether Banks had equal knowledge of the alleged hazard, i.e., did she exercise ordinary care for her own safety?

"In *Barentine v. Kroger Co.*, 264 Ga. 224, 225 (443 SE2d 485) (1994), our Supreme Court held that the plaintiff's explanation as to why he was not looking where he was going as he approached the check-out counter, that being, that he was looking at the cashier to tell him he was ready to check out, created a fact issue for jury determination. 'This testimony is some evidence that Barentine exercised reasonable care for his own safety in approaching the check-out counter.' Id." *Sheriff's Best Buy v. Davis*, 215 Ga. App. 290, 291 (450 SE2d 319). In the case sub judice, Banks did not see the floor hazard because she was "focused upon ordering at the counter which was directly ahead as well as [dodging] other customers who were coming toward the door to exit[,]" "while in *Barentine*, [a store employee, who was not even attempting to evoke Barentine's attention,] was

simply the focus of Barentine's attention. If the facts of *Barentine* establish 'some evidence' that Barentine exercised reasonable care for his own safety, then clearly [the circumstances of the case sub judice constitute] a much stronger case of such evidence." *Sheriff's Best Buy v. Davis*, 215 Ga. App. 290, 291, supra.

The trial court did not err in denying the motion for summary judgment filed by McDonald's.

*Judgment affirmed. Beasley, C. J., Pope, P. J., Blackburn and Ruffin, JJ., concur. McMurray, P. J., Pope, P. J., Blackburn and Ruffin, JJ., also concur specially. Birdsong, P. J., Andrews, Johnson and Smith, JJ., dissent.*

BLACKBURN, Judge, concurring specially.

I concur specially to respond to the dissent's misconstruction of *Barentine v. Kroger Co.*, 264 Ga. 224 (443 SE2d 485) (1994), on the issue of Banks' exercise of reasonable care. Because the record shows that McDonald's agents knew of the hazardous condition, the dispositive issue in this case is whether Banks exercised ordinary care for her own safety. *Hardin v. Super Discount Market*, 205 Ga. App. 646, 647-648 (423 SE2d 18) (1992).

*Barentine* specifically addresses this issue. In *Barentine*, the Supreme Court found that the plaintiff's admitted failure to look at the floor when he fell failed to justify a directed verdict because his explanation, that he was looking at the cashier standing a distance away from the cash register to tell him he was ready to check out, provided some evidence that he had exercised reasonable care, thereby raising a jury question. *Barentine*, 264 Ga. at 225. Notwithstanding the dissent's statement to the contrary, *Barentine* makes no reference to the distraction doctrine. Its holding did not excuse a distraction, but simply recognized that under some circumstances, the exercise of ordinary care demands a focus away from the floor. "Looking continuously, without intermission, for defects in a floor is not required in all circumstances. What is a 'reasonable lookout' depends on all the circumstances at the time and place." (Citations and punctuation omitted.) *Food Giant v. Cooke*, 186 Ga. App. 253, 257 (366 SE2d 781) (1988).

Banks testified that just as she fell her attention was on avoiding other patrons who were moving toward the door to leave the McDonald's and ordering at the check-out counter, rather than the floor. These demands on Banks' attention were more compelling than those in *Barentine*, where the cashier's location was no surprise because he had been standing in the same place when the plaintiff entered the store. As in *Barentine*, Banks' focus beyond the floor provided some evidence that she was exercising reasonable care for her own safety. The sufficiency of this evidence should be determined by a jury.

Moreover, even if Banks' focus on the crowd and the check-out counter were analyzed as distractions, they were not of her own making. The evidence that the distractions were "of such nature as naturally to divert the plaintiff, and also of such nature that the defendant might naturally have anticipated it" is sufficient to preclude summary judgment. *Stenhouse v. Winn Dixie Stores*, 147 Ga. App. 473, 475 (249 SE2d 276) (1978).

I am authorized to state that Presiding Judge McMurray, Presiding Judge Pope, and Judge Ruffin join in this special concurrence.

ANDREWS, Judge, dissenting.

Banks testified that, as she entered the McDonald's restaurant, she slipped and fell in a puddle of water about four feet wide and four feet long. She admitted the puddle was plainly visible and that she would have seen it had she looked down. Nevertheless, Banks claims she was legally excused from any duty otherwise imposed on her under the "plain view" rule to exercise ordinary care to discover and avoid the plainly visible puddle in her path. To support this claim, Banks relied on a portion of her deposition testimony and on an affidavit she filed in opposition to summary judgment.

In her deposition, Banks testified she did not see the puddle because: "If you are just walking in McDonald's, I don't think you're just going to walk in and look for water. You're just walking in there, you know, to probably order your food. So, you know, a lot of people will be going in and out." In her subsequently filed affidavit in opposition to summary judgment, Banks stated: "Upon entering the restaurant, my attention was focused upon ordering at the counter which was directly ahead as well as other customers who were coming toward the door to exit."

Thus, Banks' excuses for not exercising ordinary care to see and avoid the plainly visible puddle are that, when she entered the restaurant, she was looking toward the food counter where she was headed, and she saw other customers who were coming toward the door to exit. This amounts to no more than claiming that an ordinary fixture in the McDonald's restaurant and the mere existence of other customers are distractions or diversions sufficient to excuse Banks from exercising ordinary care for her own safety.

The majority, relying on the Supreme Court's decision in *Barentine v. Kroger Co.*, 264 Ga. 224 (443 SE2d 485) (1994), concludes these facts are sufficient to create a jury question as to whether or not Banks exercised the requisite degree of ordinary care to discover and avoid the discernible defect. By concluding *Barentine* requires this result, the majority has either expanded the type of excuses recognizable under the "distraction doctrine" beyond any previous application or has created a new category of legally recognizable "excuses" for not

discovering and avoiding plainly visible defects. Since virtually any customer on the premises of any business could articulate the same excuses given by Banks for not seeing a plainly visible defect, the effect of this decision is to remove any reasonable limits on the application of the "distraction doctrine" and destroy the viability of the "plain view" rule as a bar to recovery as a matter of law. As demonstrated below, the majority decision construes *Barentine* in a manner that fundamentally alters the law of premises liability established by the Supreme Court in *Alterman Foods v. Ligon,* 246 Ga. 620, 623 (272 SE2d 327) (1980), and abandons years of precedent governing the application of the "plain view" rule and the "distraction doctrine."

The single paragraph passage in *Barentine,* supra at 225, relied upon by the majority as authority for this radical departure simply concludes that, because the store's cashier was not at the only open cash register, and Barentine's attention was diverted by the necessity of calling the cashier to the check-out line, a jury question existed as to whether or not Barentine exercised the requisite degree of care to discover and avoid the plainly visible puddle in which he slipped and fell. Although *Barentine* does not use the words "distraction" or "diversion," the decision is clearly explainable as simply holding there was evidence Barentine was distracted or diverted by conduct attributable to the store employee; therefore, a jury question existed as to whether Barentine exercised the requisite degree of ordinary care, which precluded application of the "plain view" rule as a bar to recovery. Id. at 225; see *J. H. Harvey Co. v. Kinchen,* 213 Ga. App. 868, 869-870 (446 SE2d 218) (1994). There is nothing in *Barentine* even suggesting the Supreme Court intended the case to apply to the factual situation presented in this case and have the drastic effect given to it by the majority.

This case is controlled by long-standing precedent governing the "plain view" rule and the "distraction doctrine" as applied under the rules established by the Supreme Court in *Alterman Foods,* supra. In order for Banks to recover under *Alterman Foods,* she had to show, "(1) that [McDonald's] had actual or constructive knowledge of the [puddle] and (2) that [she] was without knowledge of the [puddle] or for some reason attributable to [McDonald's] was prevented from discovering the [puddle]." Id. at 623. Since a question of fact existed as to whether McDonald's had constructive knowledge of the puddle, the dispositive issue is whether Banks had knowledge of the puddle or for some reason attributable to McDonald's she was prevented from discovering the puddle.

In determining whether or not a plaintiff has knowledge of the defect that would bar recovery, *Alterman Foods* makes clear the plaintiff cannot establish a question of fact on this issue merely by declaring that he or she did not see a plainly visible defect. Rather,

the plaintiff must "exercise ordinary care for his own safety, and must by the same degree of care avoid the effect of the merchant's negligence after it becomes apparent to him or in the exercise of ordinary care he should have learned of it. He must make use of all his senses in a reasonable measure amounting to ordinary care in discovering and avoiding those things that might cause hurt to him." (Citations and punctuation omitted.) *Alterman Foods*, supra at 623. Although the duty to exercise ordinary care to discover and avoid defective conditions does not require one to continuously scan the floor for defects under all circumstances, ordinary care does require, as a matter of law, the use of one's eyesight to discover and avoid discernible defects in plain view in one's path. *Vermont American Corp. v. Day*, 217 Ga. App. 65, 66 (456 SE2d 618) (1995); *J. H. Harvey Co. v. Johnson*, 211 Ga. App. 809, 811 (440 SE2d 548) (1994); *Yeaple v. Grand Union Co.*, 207 Ga. App. 15, 16 (427 SE2d 13) (1992); *Sinclair v. Orozco*, 205 Ga. App. 498, 499 (423 SE2d 25) (1992). Accordingly, where it is undisputed the injury at issue was caused by a plainly visible defect in the plaintiff's path that the plaintiff would have seen had he or she looked, this Court has uniformly held under the plain view rationale that the plaintiff is barred from recovery, as a matter of law, for failure to exercise ordinary care for his or her own safety. *Vermont American Corp.*, supra at 66-67; *Edwards v. Wal-Mart Stores*, 215 Ga. App. 336, 338 (449 SE2d 613) (1994); *Bruno's, Inc. v. Pendley*, 215 Ga. App. 108 (449 SE2d 637) (1994); *Colevins v. Federated Dept. Stores*, 213 Ga. App. 49, 52 (443 SE2d 871) (1994); *Kinchen*, supra at 869; *Johnson*, supra at 811; *Winn Dixie Stores v. Carroll*, 212 Ga. App. 234 (441 SE2d 432) (1994); *Foodmax v. Terry*, 210 Ga. App. 511, 513 (436 SE2d 725) (1993); *Sinclair*, supra; *Riggs v. Great A & P Tea Co.*, 205 Ga. App. 608, 609 (423 SE2d 8) (1992).

Only two exceptions preclude application of the "plain view" rule in these type cases to bar a plaintiff from recovering as a matter of law. One exception is the "necessity rule" which recognizes that in some circumstances, despite the existence of a plainly visible defect, the plaintiff had no alternative but to assume the risk and encounter the defect. See, e.g., *Fitzgerald v. Storer Cable Communications*, 213 Ga. App. 872, 874 (446 SE2d 755) (1994). The "necessity rule," mainly applied in landlord-tenant cases, has no application in this case. The second exception is the "distraction doctrine" which recognizes that, in limited circumstances, plaintiffs may claim they were distracted and, therefore, legally excused from exercising the otherwise required degree of care to discover and avoid plainly visible defects in their paths. See, e.g., *Redding v. Sinclair Refining Co.*, 105 Ga. App. 375, 378 (124 SE2d 688) (1962).

The "distraction doctrine" is of limited application. In general, "a plaintiff may be excused from the otherwise required degree of

care because of circumstances creating an emergency situation of peril . . . [or because of other circumstances] where the plaintiff's attention is distracted by a natural and usual cause, and this is particularly true where the distraction is placed there by the defendant or where the defendant in the exercise of ordinary care should have anticipated that the distraction would occur." (Citations and punctuation omitted.) *Kres v. Winn-Dixie Stores*, 183 Ga. App. 854, 855 (360 SE2d 415) (1987); *Stenhouse v. Winn Dixie Stores*, 147 Ga. App. 473, 475 (249 SE2d 276) (1978). However, "[w]here the distraction is self-induced the plaintiff can no more take the benefit of it to excuse his lack of care for his own safety than one who creates an emergency can excuse himself because of its existence." *Redding*, supra at 379.

In *Alterman Foods*, supra, the Supreme Court explicitly recognized that a plaintiff may be excused under a distraction rationale from exercising the otherwise required degree of care. " '(W)here a proprietor owes a duty to its invitees to keep the premises in a safe condition for their passage, the setting up of a distraction, by a sign or conduct, which will so divert the customer's attention as to be the proximate cause of his injury in colliding with what might otherwise be a patent [defect] . . . may constitute actionable negligence on the part of the defendant.' *Jackson Atlantic, Inc. v. Wright*, 129 Ga. App. 857, 859 (201 SE2d 634) (1973); *Gray v. Delta Air Lines*, 127 Ga. App. 45, 52 (192 SE2d 521) (1972)." *Alterman Foods*, supra at 623. In both *Gray*, supra and *Wright*, supra, cited as authority in *Alterman Foods*, plaintiffs were distracted by conduct attributable to the defendants' employees. The Supreme Court concluded that a plaintiff may be excused from exercising the degree of care otherwise required to discover and avoid a defect where "for some reason attributable to the defendant [the plaintiff] was prevented from discovering the [defect]." *Alterman Foods*, supra at 623.

Applying this authority, we have rejected claims that plaintiffs were distracted by items on the shelves of stores, concluding the distraction was not attributable to the defendant store but was self-induced. *Riggs*, supra at 609-610; *Terry*, supra at 513 (rejecting plaintiff's claim that she was distracted because "she was looking for what she wanted to purchase"); *Yeaple*, supra at 16 (a claim by the plaintiff that she was distracted by display tables in the defendant's store was rejected as a self-induced distraction). Banks' claim that she did not see the puddle because she was focused on the food counter as she headed there to order food is indistinguishable from the claims made and rejected in the above cases that plaintiffs were distracted by items on shelves, by display tables, or by looking for items to purchase. In *Colevins*, supra, we rejected what amounted to a distraction claim almost identical to Banks' claim that she was focused on other customers headed for the door. There, we held that a plaintiff

who claimed she did not see the plainly visible defect in her path because "she was looking (straight [ahead] so she would not bump into people)" failed to exercise ordinary care for her own safety and was precluded from recovering as a matter of law. Id. at 52.

Banks' claims are like other self-induced distractions which are not attributable to the defendant and which, as a matter of law, provide no excuse for her failure to discover and avoid the puddle. An ordinary fixture on a premises like a food check-out counter or the mere existence of other customers are not distractions attributable to McDonald's. To hold otherwise, as suggested in the special concurrence to the majority opinion, would be to remove any reasonable limits on the application of the distraction doctrine. Moreover, the majority's characterization of the issue as whether Banks exercised ordinary care for her own safety, rather than a distraction issue, is a meaningless distinction. The issue here is whether the circumstances were sufficient to excuse Banks from exercising the degree of ordinary care otherwise required under the "plain view" rule to discover and avoid the plainly visible puddle in her path. Obviously, the ordinary care issue is presented in every case where a plaintiff injured by a plainly visible defect claims the failure to exercise ordinary care to see and avoid the defect was caused by some sort of distraction or diversion. This was clearly the issue in *Barentine*, supra, where the plaintiff claimed he failed to see the plainly visible puddle in his path because his attention was diverted by the necessity of calling the store's cashier to the check-out line. As noted in *Wright*, supra, under some circumstances, the physical location assumed by the defendant's employee may be conduct which would naturally cause the plaintiff's attention to be diverted and thus constitute a distraction attributable to the defendant. Id. at 859-860. In *Wright*, the "defendant's employee not only created the distraction by requesting plaintiff to move but took a position to her left whereby he might naturally have expected plaintiff to step in a direction [toward the dangerous condition]." Id. at 860. Similarly, in *Barentine*, when the defendant's cashier took a position away from the only open cash register, the defendant could reasonably anticipate that a customer's attention could be diverted as he approached the check-out line by the necessity of calling the cashier to his post.

The majority rejects this view of *Barentine* and, instead, adopts a radical construction of the case as authority supporting Banks' claims that her attention was diverted by the McDonald's food counter where she was heading to order food and by other customers in the restaurant. Under this construction of *Barentine*, the case is authority for recognizing virtually limitless circumstances as legal excuses for the failure to exercise ordinary care to discover and avoid plainly visible defects, regardless of whether the circumstances are "attribu-

table to the defendant." Compare *Alterman Foods*, supra at 623. The majority holding is contrary to the Supreme Court's application of distraction law in *Alterman Foods*, supra, and numerous prior decisions of this Court applying the "distraction doctrine" and the "plain view" rule in the context of *Alterman Foods*.

Since Banks admitted the puddle was plainly visible and that she would have seen it had she looked, under the above cited "plain view" authority, she failed, as a matter of law, to exercise ordinary care for her own safety by discovering and avoiding the puddle. Banks failed to produce any evidence that she was prevented from discovering the puddle for some reason attributable to McDonald's. It follows that Banks failed to establish under the second prong of *Alterman Foods*, supra, that she was without knowledge of the puddle or for some reason attributable to McDonald's was prevented from discovering the puddle. Nothing in the Supreme Court's *Barentine* decision requires a different result. Accordingly, McDonald's was entitled to summary judgment in its favor.

DECIDED DECEMBER 5, 1995 —
RECONSIDERATION DENIED DECEMBER 20, 1995 — 

*Swift, Currie, McGhee & Hiers, L. Bruce Hedrick, Margaret C. Briggs*, for appellant.
*Mundy & Gammage, John S. Husser*, for appellee.