## A95A1309. DILL'S FOOD CITY, INC. v. JOHNSON.
(466 SE2d 250)

McMURRAY, Presiding Judge.

Plaintiff Avalene Johnson brought this tort action against defendant Dill's Food City, Inc., seeking to recover for personal injuries sustained when plaintiff slipped and fell because the floor of defendant's grocery by the delicatessen "was wet with tea." Defendant denied the material allegations of negligence and, after a period of discovery, moved for summary judgment. Defendant's motion contended that since "the tea substance Plaintiff allegedly slipped in was of a muddy brown consistency and the floor of Defendant's premises is white, there is no question that, at most, Plaintiff can only show equal knowledge of the alleged brown substance and not superior knowledge on behalf of Defendant. . . ." Defendant further contended that, "regardless of whether Defendant was negligent, Plaintiff's failure to exercise ordinary care for her own safety demands summary judgment in Defendant's favor."

In support of these contentions, defendant introduced the deposition testimony of plaintiff, who entered defendant's store with her four-year-old daughter to purchase one specific item, tobacco. It had not been raining that day and the lighting in the store was such that plaintiff "could see everything fairly well. . . ." Plaintiff conceded that the light brown puddle of tea contrasted with the white tile of

the floor and that the spill was "a little bigger . . ." in diameter than a 12-inch pizza. Defendant relies on the following particular deposition evidence to support its claim that plaintiff failed to exercise ordinary care for her own safety: "[DEFENSE COUNSEL:] Well, if you'd looked down at the floor before you fell, would you have noticed there was mud and something mixed in with the tea in front of you on the floor? [PLAINTIFF:] (No response.) [DEFENSE COUNSEL:] I mean if the floor's white — [PLAINTIFF:] Yes. [DEFENSE COUNSEL:] and you've got some brown substance in front of you, if you'd looked down at that area, would you have seen that before you fell? [PLAINTIFF:] Yes."

In opposition to defendant's motion, plaintiff submitted her affidavit that defendant had no warning sign placed to alert customers of the wet floor, nor was any mop or bucket visible; that plaintiff could see Louise Tillman, defendant's employee, behind the deli counter; that from her position behind the counter, Louise Tillman had a clear view of the aisle where plaintiff was walking; that the distance from the deli counter where defendant's employee stood to the area where plaintiff fell was 20 feet but that Louise Tillman never gave plaintiff any warning; that only after she fell did plaintiff notice a good bit of liquid on the floor; that Louise Tillman took plaintiff to the manager's office, where the manager prepared an incident report reciting: "[Plaintiff's] statement was she was going down in front of deli. Tea was spilled on the floor. She did a split when she fell. She was complaining she had pain in [her] left leg. . . . Dill employee Louise Tillman . . . was mopping up the tea. She turn[ed] to go get a Wet Floor sign but did not see her fall." Plaintiff further showed that, at her deposition, she first stated "I don't know . . ." to whether she could have seen the puddle before she fell, "because it was like mud — mud or something mixed up with it."

The trial court denied defendant's motion for summary judgment but certified its order for immediate review. Defendant's application for interlocutory appeal was granted and a timely notice of appeal was filed. *Held*:

Defendant enumerates the denial of its motion for summary judgment, arguing that plaintiff can show only the defendant's equal knowledge, and further arguing that plaintiff's "failure to exercise ordinary care for her own safety demands summary judgment in Defendant's favor." We disagree.

The evidence, when viewed in the light most favorable to plaintiff as the non-movant, would authorize a jury's finding that defendant had actual knowledge of the hazard, established by the incident report drafted by defendant's manager indicating the presence of Louise Tillman, mopping up the spill, and would further authorize a finding that plaintiff was without knowledge of that hazard, since Louise

Tillman failed to warn plaintiff of the spill before Louise Tillman turned to go get a Wet Floor sign. In our view, the case sub judice is therefore controlled favorably to plaintiff-invitee Avalene Johnson by the rationale employed in such recent whole court decisions as *Jackson v. Camilla Trading Post,* 218 Ga. App. 164, 167 (460 SE2d 849) and *Dept. of Human Resources v. Thomas,* 217 Ga. App. 174 (1) (a), 176 (456 SE2d 724), cert. denied. In each of those cases, a majority of this Court agreed that the question whether a plaintiff failed to exercise ordinary care on her own behalf, because she *should* have seen the hazardous foreign substance that she claimed she *did* not see, was for the jury to determine. Moreover, the case sub judice is factually distinguishable from *Bruno's, Inc. v. Pendley,* 215 Ga. App. 108 (449 SE2d 637), in the material aspect of the state of plaintiff's knowledge. In *Bruno's, Inc. v. Pendley,* supra, it was undisputed that the plaintiff "observed a yellow 'wet floor' sign next to [leaking] ice bags." Id. Thus, unlike the case sub judice, in *Bruno's, Inc. v. Pendley,* supra, that plaintiff's *actual* knowledge of the precise hazard was undisputed. The dissent's reliance thereon in this case is, therefore, misplaced.

Contrary to the dissent's characterization of the undisputed facts as indicating that nothing distracted plaintiff to prevent her from discovering the hazard, (dissent, p. 657, post), plaintiff testified at her deposition that she was "walking down by the shelf[, . . .] looking at pickles or something," while holding her four-year-old daughter's hand. While plaintiff was "looking on the shelf[, she . . . walked a little further and a little further and then [she] fell." Although plaintiff confirmed she was not "looking at any merchandise on the shelves . . ." *after* looking at pickles, she subsequently explained that, *before* her fall, she was looking straight ahead, i.e., "on the shelf, and then I fell." The *un*favorable testimony cited by the dissent was adduced in the following manner: "[DEFENSE COUNSEL:] As you were looking at the pickles and walking, right before you fell, did anything distract you or divert your attention from what you were looking at? [PLAINTIFF:] No." Properly viewed in the light most favorable to plaintiff as the non-movant, the form of this cross-examination does not elicit a self-contradictory statement from plaintiff. Rather, this question *concedes* that she is *already distracted* by the merchandise on display. In our view, the case sub judice falls within that class of cases where a jury question is presented as to the plaintiff's exercise of ordinary care for her own safety, even though the 12-inch brownish puddle contrasted with the white tile floor. *Dept. of Human Resources v. Thomas,* 217 Ga. App. 174 (1) (a), 176, supra. " 'One is not bound to the same degree of care in discovering or apprehending danger in moments of stress or excitement or when the attention has been necessarily diverted as at other times.' In *Big Apple Super Mar-*

*ket of Rome v. Briggs*, 102 Ga. App. 11 (115 SE2d 385) the petition of a plaintiff who stumbled over a box negligently protruding into a store aisle was held to present a jury question on the issue of the plaintiff's exercise of ordinary care for her own safety under the circumstances. Chief Judge Felton stated: "The question whether the plaintiff might have discovered the articles in the aisle by the exercise of ordinary care must be determined in the light of the attendant circumstances. *Kitchens v. Davis*, 96 Ga. App. 30 [(99 SE2d 266)]. The [deposition evidence in the case sub judice authorizes the inference] that her attention was diverted by *displays of merchandise* on nearby shelves. It is therefore a question for the jury whether she should, in the exercise of ordinary care, have discovered the [spilled tea] in the aisle and avoided [slipping in] it. [Cits.]' " (Emphasis supplied.) *Redding v. Sinclair Refining Co.*, 105 Ga. App. 375, 377 (2), 379 (124 SE2d 688). Compare *Riggs v. Great A & P Tea Co.*, 205 Ga. App. 608, 610 (423 SE2d 8).

The trial court in the case sub judice correctly perceived that genuine issues of material fact remain for jury determination. Consequently, its order denying summary judgment is affirmed.

*Judgment affirmed. Pope, P. J., Blackburn and Ruffin, JJ., concur. Beasley, C. J., concurs specially. Birdsong, P. J., Andrews, Johnson and Smith, JJ., dissent.*

BEASLEY, Chief Judge, concurring specially.

I concur in the judgment, but the undisputed facts in this case do not call for any analysis under the distraction theory. Merchandise on shelves is not a "distraction" in the legal sense it is used in the law of negligence. *Riggs v. Great A & P Tea Co.*, 205 Ga. App. 608 (423 SE2d 8) (1992).

ANDREWS, Judge, dissenting.

Johnson sued Dill's Food City for injuries she sustained when she slipped and fell in a puddle of tea while shopping at the Dill's Food City store. The store was well lit and the floor was white. Johnson walked down the pickle aisle, looking at the shelves in search of pickles, until she slipped and fell in a muddy puddle of tea. Johnson did not see the puddle until after she had fallen in it. In her deposition, Johnson admitted that the brown puddle on the white floor was larger than a 12-inch pizza and she would have seen it if she had looked down at the floor. She further stated that she was looking at pickles on the shelf before she fell and that nothing else was distracting or diverting her attention at the time. Johnson also stated that a store employee told her that she was aware of the puddle and had been trying to warn customers to avoid it.

"[I]n order to state a cause of action in a case where the plaintiff

alleges that due to an act of negligence by the defendant he slipped and fell on a foreign substance on the defendant's floor, the plaintiff must show (1) that the defendant had actual or constructive knowledge of the foreign substance and (2) that the plaintiff was without knowledge of the substance or for some reason attributable to the defendant was prevented from discovering the foreign substance." *Alterman Foods v. Ligon*, 246 Ga. 620, 623 (272 SE2d 327) (1980).

Even if we construe the employee's statement to Johnson as probative evidence that Dill's had actual knowledge of the puddle under an exception to the hearsay rule (compare *Brooks v. Kroger Co.*, 194 Ga. App. 215, 216 (390 SE2d 280) (1990)), the second part of the *Alterman Foods* test requires Johnson to show that, despite exercising ordinary care for her own safety, she was without knowledge of the puddle's presence. While Johnson stated in her deposition that she did not see the puddle, she also stated that the puddle was clearly visible and that she would have seen it had she looked down at the floor.

Under the second prong of *Alterman Foods*, " '(t)he customer must exercise ordinary care for his own safety, and must by the same degree of care avoid the effect of the merchant's negligence after it becomes apparent to him or in the exercise of ordinary care he should have learned of it. He must make use of all his senses in a reasonable measure amounting to ordinary care in discovering and avoiding those things that might cause hurt to him.' " *Alterman Foods*, supra at 623. Thus, under *Alterman Foods* Johnson cannot recover if, by the exercise of ordinary care, she should have seen and avoided the plainly visible puddle.

The duty to exercise ordinary care to discover and avoid defective conditions does not require a customer to continuously scan the floor for defects under all circumstances, but it does require, as a matter of law, the use of one's eyesight to discover and avoid plainly visible hazards in one's path. *Vermont American Corp. v. Day*, 217 Ga. App. 65, 66 (456 SE2d 618) (1995); *J. H. Harvey Co. v. Johnson*, 211 Ga. App. 809, 811 (440 SE2d 548) (1994); *Yeaple v. Grand Union Co.*, 207 Ga. App. 15, 16 (427 SE2d 13) (1992); *Sinclair v. Orozco*, 205 Ga. App. 498, 499 (423 SE2d 25) (1992). Accordingly, where, as here, Johnson claims she was injured by a plainly visible defect in her path, and it is undisputed that she would have seen the defect if she looked, this Court has consistently held under the second prong of *Alterman Foods* that the plaintiff is barred from recovery, as a matter of law, for failure to exercise ordinary care for her own safety. *Vermont American Corp.*, supra at 66-67; *Edwards v. Wal-Mart Stores*, 215 Ga. App. 336, 338 (449 SE2d 613) (1994); *Bruno's, Inc. v. Pendley*, 215 Ga. App. 108 (449 SE2d 637) (1994); *Colevins v. Federated Dept. Stores*, 213 Ga. App. 49, 52 (443 SE2d 871) (1994); *J. H. Har-*

*vey Co. v. Kinchen*, 213 Ga. App. 868, 869 (446 SE2d 218) (1994); *Johnson*, supra at 811; *Winn Dixie Stores v. Carroll*, 212 Ga. App. 234 (441 SE2d 432) (1994); *Foodmax v. Terry*, 210 Ga. App. 511, 513 (436 SE2d 725) (1993); *Sinclair*, supra; *Riggs v. Great A & P Tea Co.*, 205 Ga. App. 608, 609 (423 SE2d 8) (1992).

Moreover, any claim by Johnson that she was looking at the pickles on the shelf rather than at the floor does not create a question of fact under the "distraction doctrine." Looking at items on the shelves of stores is not a distraction attributable to the defendant store but is a self-induced distraction which did not excuse Johnson from exercising ordinary care to discover and avoid the plainly visible hazard. *Riggs*, supra at 609-610; *Terry*, supra at 513; *Redding v. Sinclair Refining Co.*, 105 Ga. App. 375, 379 (124 SE2d 688) (1962). Accordingly, Johnson cannot claim that "for some reason attributable to the defendant [she] was prevented from discovering the [hazard]." *Alterman Foods*, supra at 623.

Johnson admitted the puddle was plainly visible and that she would have seen it had she looked at the floor. There is no evidence that she was prevented from seeing and avoiding the puddle for some reason attributable to the store. Accordingly, she failed, as a matter of law, to exercise ordinary care by discovering and avoiding the puddle and is barred from recovery under *Alterman Foods*, supra.

I am authorized to state that Presiding Judge Birdsong, Judge Johnson and Judge Smith join in this dissent.

SMITH, Judge, dissenting.

While I concur fully in Judge Andrews' dissent, I write separately to point out that the majority in this case is attempting to create a new rule of law on the issue of actual and constructive knowledge, a rule which is contrary to the Georgia Supreme Court's holding in *Alterman Foods v. Ligon*, 246 Ga. 620, 623 (272 SE2d 327) (1980). That decision clearly requires that a business invitee must avoid the effect of a proprietor's negligence "after it becomes apparent to him or in the exercise of ordinary care he should have learned of it." 246 Ga. at 623.

The majority here attempts to create a new rule that *actual* knowledge of a proprietor is always "superior" to *constructive* knowledge on the part of an invitee. This reasoning conflates the two separate parts of the *Alterman* test, which have always been addressed separately by the Georgia courts. See, e.g., *Smith v. Wal-Mart Stores*, 199 Ga. App. 808, 810 (406 SE2d 234) (1991). Moreover, this approach erases the requirement that the invitee use ordinary care to discover hazards in his path. I can find no basis in the existing decisional law for such a major alteration in the *Alterman* rule.

I am authorized to state that Presiding Judge Birdsong, Judge

Andrews and Judge Johnson join in this dissent.

Decided December 5, 1995 —
Reconsideration denied December 20, 1995 —

*Chambers, Mabry, McClelland & Brooks, Lawrence J. Hogan, C. Gregory Ragsdale*, for appellant.
*Adams, Clifton & Sanders, Russell W. Smith*, for appellee.