A95A0884. PIGGLY WIGGLY SOUTHERN, INC. et al.
v. BROWN.
(468 SE2d 387)

McMURRAY, Presiding Judge.

Margaret Brown brought an action against Piggly Wiggly Southern Corporation ("Piggly Wiggly") for damages she allegedly sustained when she slipped and fell in a small puddle of water in Piggly Wiggly's grocery store.[1] Piggly Wiggly denied the material allegations of the complaint and filed a motion for summary judgment, arguing that Margaret Brown's admission that she could have seen the water (had she been looking for it) constitutes conclusive proof that Brown's own carelessness was the sole proximate cause of her alleged injuries.

On the morning of September 14, 1991, Margaret Brown and her sister, Josephine Moore, drove to Piggly Wiggly's grocery store in Hawkinsville, Georgia. Josephine Moore waited in the car while Brown went in to purchase a can of soup. After entering the store, Margaret Brown walked through a long bank of cash registers and veered right toward a table of potatoes in the produce section. Upon approaching the row of shelving which faces or borders the produce section, Margaret Brown saw "[a] little sign up there saying . . . what stuff [is] on each aisle" and started to turn down the aisle toward the soup. While pivoting into the turn, however, Margaret Brown lost control and crashed hard into the potato display. She slipped in a puddle of water about the size of a dinner plate.[2]

---

[1] Brown includes the store manager, Gilbert Bradley, as a party to this action.
[2] Although the dissent states that Brown fell as she "turned to enter the soup aisle[,]"

While on the floor, Margaret Brown saw a store employee in a nearby storeroom shoveling ice from an ice machine into a container. Former Piggly Wiggly employee James Hampton, who was employed as a "bag boy" there at the time of the fall, explained (in his affidavit) that "the produce man would usually have to make several trips from the ice maker to the produce counter in order to fill the area under the [fruit and vegetable] tray." James Hampton said that he observed "the produce man icing down the produce counter . . ." about two hours earlier and that he then saw "water on the floor in the produce section. . . ." James Hampton explained that the "produce man" would routinely drop "chunks of ice" on the floor as he transported it to the fruit and vegetable trays and that, "[d]uring the time [he] worked at the Piggly Wiggly Store, [he has] on more than a few occasions seen water on the floor that has remained there for long periods of time." James Hampton said the store manager "never [gave] any specific instructions . . . about inspecting the aisles for water or other substances on the floor."

The trial court denied Piggly Wiggly's motion for summary judgment, finding that genuine issues of material fact remain for jury resolution. This interlocutory appeal followed. *Held*:

"An owner/occupier of premises has a duty to keep those premises safe for its invitees. OCGA § 51-3-1; *Thompson v. Regency Mall Assoc.*, 209 Ga. App. 1 (432 SE2d 230) (1993). 'An invitee enters upon the premises under an implied representation, or assurance, that the land has been prepared and made ready and safe for his reception. The invitee is entitled to expect the possessor will exercise reasonable care to make the land safe for his entry. (Cit.) It is this implied representation that is made to the public, by holding the land open to them, that it has been prepared for their reception, that it is safe, that is the basis for the possessor's liability. (Cit.)' *Begin v. Ga. Championship Wrestling*, 172 Ga. App. 293, 294 (322 SE2d 737) (1984).

"In order to recover for a slip and fall due to a foreign substance

---

the dissent fails to mention that there is evidence which would authorize a finding that the soup aisle shelving faces or borders the produce section. In this vein, we quote Josephine Moore's testimony that she found her "sister . . . on the floor when [she] went in the store" and that she then observed Margaret Brown "sitting between the potato racks." Josephine Moore explained that several tables of vegetables (i.e., onions, carrots, etc.) were joined to the potato table and that Margaret Brown was "near a display *in the produce section*." Defense counsel asked, "[W]as [Brown] at the beginning of an aisle?" And Josephine Moore responded: "No. She hadn't made it to that aisle yet. I told you where she was[, she] was right there at the potato table." In the same vein, Margaret Brown drew a crude diagram of the area where she fell during her deposition and marked thereon the position of the door where she first entered the store with a "D," the location of the check-out stations she passed immediately before her fall with a "C" and the spot where she fell with an "X." This diagram is attached as an appendix to this opinion.

on the floor, the plaintiff must show that the defendant had actual or constructive knowledge of the hazard, and that the plaintiff was without equal knowledge of such. *Alterman Foods v. Ligon*, 246 Ga. 620 (272 SE2d 327) (1980). 'Liability for injuries resulting from an invitee's slip and fall on a proprietor's premises is determined by the relative knowledge possessed by the proprietor and the invitee of the condition or hazard which resulted in the injury. The basis of the proprietor's liability is his superior knowledge. . . .' *Shansab v. Homart Dev. Co.*, 205 Ga. App. 448, 450 (422 SE2d 305) (1992)." *Burke v. Bi-Lo*, 212 Ga. App. 115, 116 (441 SE2d 429).

In the case sub judice, former Piggly Wiggly "bag boy" James Hampton deposed that he was aware that water had accumulated on the floor in the produce section before Margaret Brown fell and that indifference to such puddling was a matter of routine at Piggly Wiggly's store in Hawkinsville, Georgia. This evidence not only satisfies the first prong of the *Alterman Foods* test by indicating that a Piggly Wiggly employee had actual knowledge of the hazard which caused Margaret Brown's fall, but it would also authorize a finding (if a jury so chooses) that Piggly Wiggly, as a matter of routine indifference, did not bother to remove the hazard. Assuming the dissent is correct, however, in inferring (via the statement that there "is no evidence the store had actual knowledge of the water . . .") that Margaret Brown, in order to prove actual knowledge, was required to show that either James Hampton or another Piggly Wiggly employee could call the particular water puddle where Margaret Brown fell by name (so to speak), Piggly Wiggly has failed to negate the possibility of its constructive knowledge of the hazard. Specifically, Piggly Wiggly offers no proof that it employed routine inspection procedures aimed at detecting and preventing dangerous spills in its store and, even more amazingly, Piggly Wiggly offers no testimony to rebut James Hampton's sworn statement that he had no knowledge of store policy regarding such inspections. "The evidence thus failed to negate the possibility that [Piggly Wiggly] did not exercise reasonable care in this case, even if the store had a general inspection routine. See *Hilsman v. Kroger Co.*, 187 Ga. App. 570 (370 SE2d 755) (1988); *Flood v. Camp Oil Co.*, 201 Ga. App. 451 (411 SE2d 348) (1991). Further, [contrary to the dissenting opinion,] in the absence of any evidence that [Piggly Wiggly] conducted a reasonable inspection of the premises prior to the fall, [Margaret Brown] was not required to establish how long the spill had remained on the floor. *Jackson v. Wal-Mart Stores*, 206 Ga. App. 165, 169 (424 SE2d 845) (1992)." *Burke v. Bi-Lo*, 212 Ga. App. 115, 117, supra.[3] Thus, the only question remaining is

---

[3] This is not to say, however, that there was no evidence of Piggly Wiggly's constructive

whether Margaret Brown had equal knowledge of the alleged water hazard, i.e., did she exercise ordinary care for her own safety?

Margaret Brown testified that she did not see the small puddle of water before she fell. It therefore cannot be said (as a matter of law) that Margaret Brown actually had knowledge of the specific hazard which caused her to fall. See *Grovner v. Winn Dixie Stores*, 218 Ga. App. 495, 496 (462 SE2d 427). "Thus, the facts of this case are distinguishable from [controlling authority] in support of [the dissent's] conclusion that [Brown] is precluded from recovering because of her equal knowledge. See, e.g., *Kersey v. C. S. R. A. &c. Auth.*, 195 Ga. App. 94 (392 SE2d 305) (1990) (in which plaintiff alleged no defect or foreign substance, but merely that defendant was negligent in sending her down a stairway while she was carrying a heavy load); *Gyles, Inc. v. Turner*, 184 Ga. App. 376 (361 SE2d 538) (1987) (in which plaintiff was aware of the discernible object which caused the hazard); *Harris v. Star Svc. &c. Co.*, 170 Ga. App. 816 (318 SE2d 239) (1984) (in which plaintiff knew he was traversing ice and snow accumulated on the premises of defendant gas station)." *Flood v. Camp Oil Co.*, 201 Ga. App. 451, 452, supra. Also see *Van Dyke v. Emro Mktg. Co.*, 211 Ga. App. 744 (440 SE2d 469) (where this Court reversed summary judgment even though there was evidence that the plaintiff had prior knowledge of the hazard which allegedly caused his fall). And contrary to the dissenting opinion in the case sub judice, we do not subscribe to the view that shoppers must be on constant lookout for such obtuse hazards as small puddles of water.

"An invitee is [simply] not required to look for . . . defects continuously and without interruption. See *Thompson v. Regency Mall Assoc.*, supra." *Burke v. Bi-Lo*, 212 Ga. App. 115, 117, supra. In the case sub judice, there is proof which would authorize a jury's finding that Margaret Brown was shopping, had just observed an overhead directory sign and was pivoting into a left turn when she hit a small puddle of water at the corner of an aisle, nearest the shelving facing the produce section. There is also proof which would authorize a finding that this puddle was caused by melted ice dropped by the man in charge of the produce section; that this patch of melted ice water had

---

knowledge. "Constructive knowledge may be established by showing that an employee of the proprietor was in the immediate area of the hazardous condition and could have easily seen the substance or that a foreign substance remained on the floor for such a time that ordinary diligence by the proprietor should have effected its discovery. *Jester v. Ingles Market*, 206 Ga. App. 327, 328 (425 SE2d 323) (1992)." *Foodmax v. Terry*, 210 Ga. App. 511 (1) (436 SE2d 725). In the case sub judice, Margaret Brown testified that a Piggly Wiggly employee was near the area where she fell, loading ice into a container, and Brown's diagram of the store shows that the presumably busy cash register area was near the area where she fell. Further, James Hampton deposed that there was water in the produce section before Brown fell; that the "produce man" was responsible for cleaning up such spills, but that such cleanup duties were not a high priority at Piggly Wiggly's Hawkinsville store.

been on the floor for at least two hours before Margaret Brown's fall (or at least long enough for the ice to melt) and that the hazard was just large "enough for your shoe to fit in. . . ." Under these circumstances, we cannot say (as a matter of law) that the small puddle of water which caused Margaret Brown's fall was such an open and obvious danger that the average shopper, in the exercise of ordinary care, would have observed the puddle and avoided it. See *Grovner v. Winn Dixie Stores*, 218 Ga. App. 495, 496, supra. Such questions of negligence and diligence, including the related issues of lack of ordinary care for one's own safety or lack of ordinary care in failing to see or observe the negligence of another, are ordinarily for a jury. *Hester v. Baker*, 180 Ga. App. 627, 629 (3), 630 (349 SE2d 834).

"A finding that the plaintiff is precluded from recovering in a slip and fall case because of her own equal or superior knowledge of the hazard is, in essence, a finding that plaintiff's own negligence preponderated in causing the injury. Cf. *Alterman Foods v. Ligon*, 246 Ga. 620, 623[, supra]. 'The trial court can conclude as a matter of law that the facts do or do not show negligence on the part of the defendant or the plaintiff only where the evidence is plain, palpable and undisputable.' *Ellington v. Tolar Constr. Co.*, 237 Ga. 235, 237 (II) (227 SE2d 336) (1976)." *Flood v. Camp Oil Co.*, 201 Ga. App. 451, 452, supra. In the case sub judice, the trial court found that the evidence was not so plain, palpable and undisputable so as to preclude Margaret Brown from recovering in this slip and fall case because of her own equal or superior knowledge of the hazard. We think the trial court was correct in so ruling and affirm its judgment. See *Barentine v. Kroger Co.*, 264 Ga. 224, 225 (443 SE2d 485).

*Judgment affirmed. Beasley, C. J., Pope, P. J., Blackburn and Ruffin, JJ., concur. Birdsong, P. J., Andrews, Johnson and Smith, JJ., dissent.*

ANDREWS, Judge, dissenting.

As Brown turned to enter the soup aisle at the Piggly Wiggly store, she stepped into a puddle of water, slipped, and fell. In her deposition, Brown testified that she did not see the water before she stepped in it, but that it was clearly visible and that she would have seen it if she had looked. She stated that nothing would have prevented her from seeing the water if she had looked down.

"[I]n order to state a cause of action in a case where the plaintiff alleges that due to an act of negligence by the defendant he slipped and fell on a foreign substance on the defendant's floor, the plaintiff must show (1) that the defendant had actual or constructive knowledge of the foreign substance and (2) that the plaintiff was without knowledge of the substance or for some reason attributable to the defendant was prevented from discovering the foreign substance." *Al-*

*terman Foods v. Ligon*, 246 Ga. 620, 623 (272 SE2d 327) (1980). There is no evidence the store had any actual knowledge of the water in which Brown slipped and fell. Even assuming the store had constructive knowledge of the water, Piggly Wiggly was still entitled to summary judgment under the second prong of *Alterman Foods*, supra.

Under the second prong of *Alterman Foods*, supra, the store was entitled to summary judgment if Brown knew about or should have discovered the puddle, unless the store somehow prevented her from discovering it. *Smith v. Wal-Mart Stores*, 199 Ga. App. 808, 810 (406 SE2d 234) (1991). This part of the *Alterman Foods* test demands that a person must "exercise ordinary care for his own safety, and must by the same degree of care avoid the effect of the merchant's negligence after it becomes apparent to him or in the exercise of ordinary care he should have learned of it. He must make use of all his senses in a reasonable measure amounting to ordinary care in discovering and avoiding those things that might cause hurt to him." (Citations and punctuation omitted.) *Alterman Foods*, supra at 623. Even if the store is charged with constructive knowledge of the puddle, so long as Brown saw or, in the exercise of ordinary care, should have seen the puddle, and the store did nothing to prevent her from seeing it, Brown is deemed to have knowledge of the hazard and is barred from recovery. Id. at 623.

Brown admitted in her deposition that although she did not see the puddle before she fell, it was clearly visible and she would have seen it if she had looked down. She admitted that nothing prevented her from seeing the puddle, and she made no claim that she was distracted by anything. These admissions are fatal to her claim. Although the exercise of ordinary care for one's own safety does not require a continuous scanning of the floor for possible defects under all circumstances, ordinary care does require the use of one's eyesight to discover and avoid hazards in plain view. *Vermont American Corp. v. Day*, 217 Ga. App. 65, 66 (456 SE2d 618) (1995); *J. H. Harvey Co. v. Johnson*, 211 Ga. App. 809, 811 (440 SE2d 548) (1994); *Yeaple v. Grand Union Co.*, 207 Ga. App. 15, 16 (427 SE2d 13) (1992); *Sinclair v. Orozco*, 205 Ga. App. 498, 499 (423 SE2d 25) (1992). Thus, where, as here, an injury resulted from a plainly visible defect in the plaintiff's path, that the plaintiff admits she would have seen if she had looked, we have repeatedly held that the plaintiff is barred from recovery for failing to exercise ordinary care for her own safety. *Vermont American Corp.*, supra at 66-67; *Edwards v. Wal-Mart Stores*, 215 Ga. App. 336, 338 (449 SE2d 613) (1994); *Bruno's, Inc. v. Pendley*, 215 Ga. App. 108 (449 SE2d 637) (1994); *Colevins v. Federated Dept. Stores*, 213 Ga. App. 49, 52 (443 SE2d 871) (1994); *J. H. Harvey Co. v. Kinchen*, 213 Ga. App. 868, 869 (446 SE2d 218) (1994);

*Johnson,* supra at 811; *Winn Dixie Stores v. Carroll,* 212 Ga. App. 234 (441 SE2d 432) (1994); *Foodmax v. Terry,* 210 Ga. App. 511, 513 (436 SE2d 725) (1993); *Sinclair,* supra; *Riggs v. Great Atlantic & Pacific Tea Co.,* 205 Ga. App. 608, 609 (423 SE2d 8) (1992).

In holding that Brown's knowledge of the puddle in this case does not bar her recovery, the majority relies on *Van Dyke v. Emro Mktg. Co.,* 211 Ga. App. 744 (440 SE2d 469) (1993) and *Flood v. Camp Oil Co.,* 201 Ga. App. 451 (411 SE2d 348) (1991) in an attempt to distinguish this case from other cases in which recovery was barred because the hazard was plainly visible. In those cases, we held that a jury question remained even though the puddles in which the plaintiffs slipped and fell were visible. Both *Van Dyke* and *Flood* are clearly distinguishable from the present case. In *Van Dyke,* although the plaintiff saw the puddle of water with a substance floating on top, he did not know the substance was kerosene, and did not fully appreciate the extremely slippery hazard presented by the combination of water and kerosene. Because a store employee had actually seen the kerosene spill and recognized the true nature of the puddle, we found there was a jury question as to whether the store had superior knowledge of the hazard. Similarly, in *Flood* we found that, although the plaintiff could see the oily wet pavement on which she stepped and slipped, she did not know of the increased hazard presented by diesel fuel which had spilled and mixed with the water and oil. Since there was evidence the defendant knew of the diesel fuel spill, we found there was a jury question as to whether the defendant had superior knowledge of the hazard. Here, Brown was as qualified as any store employee to recognize the hazard presented by a puddle of water, so there is no genuine issue of material fact in dispute regarding Brown's knowledge of the nature of the hazard.

The proximate cause of Brown's injury was her failure to exercise ordinary care for her own safety by discovering and avoiding the plainly visible puddle in her path. Accordingly, Piggly Wiggly was entitled to summary judgment.

I am authorized to state that Presiding Judge Birdsong, Judge Johnson and Judge Smith join in this dissent.

SMITH, Judge, dissenting.

While I concur fully with Judge Andrews' dissent, I write separately to point out that the majority in this case is attempting to create a new rule of law on the issue of actual and constructive knowledge, a rule which is contrary to the Georgia Supreme Court's holding in *Alterman Foods v. Ligon,* 246 Ga. 620, 623 (272 SE2d 327) (1980). See separate dissent in *Dill's Food City v. Johnson,* 219 Ga. App. 654 (466 SE2d 250) (1995).

I am authorized to state that Judge Andrews and Judge Johnson

join in this dissent.

## ON MOTION FOR RECONSIDERATION.

In response to Piggly Wiggly's claim on reconsideration that we misconstrued the evidence regarding James Hampton's knowledge of "water on the floor in the produce section on the morning Margaret Brown fell[,]" we point out that on appeal an appellate court is bound to construe the evidence with every reasonable inference and presumption in favor of the non-moving party on summary judgment. *Padgett v. M & M Super Market*, 195 Ga. App. 799, 800 (395 SE2d 245). From this perspective, we quote James Hampton's affidavit in its entirety: "1. My name is JAMES HAMPTON and I am competent in all respects to testify regarding the matters set forth herein. 2. On Saturday, September 14, 1991, I was employed by Piggly Wiggly Store in Hawkinsville, Georgia, as a bag boy. I got to work on that date sometime after 7 A.M. I was in the store at the checkout counter when Margaret Brown, whom I know by sight, came into the store. 3. My regular duty was to bag groceries for customers, but I would be called on also to work as a stock boy, moving old stock off the shelves and replacing with new stock. 4. On the morning of September 14, 1991, I recall the produce man icing down the produce counter around 9:00 A.M. The way this is done is that the produce man would transport containers full of crushed ice from the stock room where the ice making machine is located over to the produce counter. On several occasions I have seen chunks of ice fall from the container to the floor while being transported. Also, I have seen chunks of ice fall to the floor while the produce man is pouring ice under the tray upon which the vegetables and fruits are placed. The produce man would usually have to make several trips from the ice maker to the produce counter in order to fill the area under the tray. 5. When the produce man is adding fresh ice or cleaning out the old ice by draining water he usually puts out a 'Wet Floor' sign which is a white triangle with black letters. I did not see this sign on the floor on the morning that Margaret Brown fell. 6. The produce man would be the person responsible for mopping around the produce section. I don't remember seeing him mopping the floor on the morning of September 14, 1991. 7. During the period of time I worked at the Piggly Wiggly Store, I have seen puddles in and around the produce section caused by chunks of melted ice that had fallen to the floor. 8. During the time I worked at the Piggly Wiggly Store, I have on more than a few occasions seen water on the floor that has remained there for long periods of time. 9. I have never been given any specific instructions by the manager, Mr. Braddock, about inspecting the aisles for water or other substances on the floor. It was my understanding that each employee was responsible for his own area. My area would be around the check-out counter

where I worked as a bagger. I have on occasions been called by a customer who had pointed out water or some other substance on the floor. On those occasions, I have mopped up the water or spilt substances. 10. On the morning of September 14, 1991, sometime between 10 a.m. and 11 a.m., I remember Margaret Brown being helped by Mr. Braddock and Patricia as she was slowing [sic] walking from the direction of the produce section towards the front of the store. She appeared to be in a lot of pain. I heard Ms. Brown say she had slipped in water. 11. I remember seeing water on the floor in the produce section on the morning Margaret Brown fell. To my best recollection the water remained on the floor for a long time after Ms. Brown had left the store."

*Motion for reconsideration denied.*

EXHIBIT

DECIDED DECEMBER 5, 1995 —
RECONSIDERATION DENIED DECEMBER 20, 1995 —

*Jones, Cork & Miller, Timothy Harden III, W. Kerry Howell,* for appellants.

*Thomas M. Jackson,* for appellee.