## A96A0715. MOORE v. KROGER COMPANY.
### (471 SE2d 916)

JOHNSON, Judge.

Janice S. Moore brought this tort action against The Kroger Company seeking to recover for personal injuries sustained when she slipped and fell in a Kroger grocery store. The trial court granted summary judgment to Kroger and Moore appeals.

This is a "slip and fall" premises liability case in which the facts presented to the trial court are straightforward and not in material dispute. Moore testified at her deposition that when she entered the Kroger Company store she did not take a shopping cart, but was collecting ingredients to make lasagna. She was walking up the aisle where the pasta and pasta sauces were located, carrying two pounds of meat, a loaf of bread and two pounds of cheese. She was looking at the various brands of sauces when she slipped and fell halfway down the aisle. Asked "If you had been looking down, could you have seen the orange substance on the white floor?" Moore replied "I would think so . . . yes."

At the threshold of analysis in every such premises liability case stand two well-settled legal principles: First, the owners and occupiers of property are not insurers of the safety of their invitees; and, second, in order to prevail, the plaintiff must show that the owner or occupier of the premises had *superior* knowledge of the alleged defect which caused the plaintiff's fall. See *Gaydos v. Grupe Real Estate &c.*, 211 Ga. App. 811, 812 (440 SE2d 545) (1994); *Howell v. Three Rivers Security*, 216 Ga. App. 890, 891 (456 SE2d 278) (1995); *Westbrook v. M & M Supermarkets*, 203 Ga. App. 345 (1) (416 SE2d 857) (1992). Because "slip and fall" cases are frequently very fact-specific and fact-intensive, it sometimes has been difficult to apply these principles correctly and difficult to distinguish those cases in which summary judgment is demanded from those in which to grant summary judgment would be an injustice. This is not one of those difficult cases, however.

To survive summary judgment in this case, Moore must show that The Kroger Company had actual or constructive knowledge of the hazard created by the spaghetti sauce upon which she slipped

*and* that she was without knowledge of the hazard or, for some reason attributable to Kroger, she was prevented from discovering the hazard. See *Alterman Foods v. Ligon*, 246 Ga. 620, 623 (272 SE2d 327) (1980).

Moore has presented no evidence to contradict Kroger's evidence that it had no actual knowledge of the presence of the sauce on the floor. Furthermore, Moore testified that she had no idea how long the foreign substance had been on the floor. There is no evidence even suggesting that the foreign substance was on the floor for a length of time sufficient for knowledge of its presence to be imputed to Kroger such as would give rise to a finding of constructive knowledge of the hazard. Compare *Brown v. Piggly Wiggly &c.*, 210 Ga. App. 459, 460 (436 SE2d 513) (1993). Likewise, Moore's testimony that she saw a Kroger employee behind a cash register at the end of the aisle is insufficient to raise an inference that any employee of Kroger was in the immediate vicinity of the hazard and could have noticed and removed it. Compare *Queen v. Kroger Co.*, 191 Ga. App. 249, 250 (1) (381 SE2d 413) (1989). The dissent extrapolates that "the jury would be authorized to find that defendant may be charged with knowledge of the hazard, established by the presence of its cashier, who was in a position to warn plaintiff even if she could not leave her register to clean up the spill" and concludes that a jury would be authorized to find that "plaintiff did not *necessarily* fail to exercise ordinary care for her own safety, even though she did not notice the smeared orange substance against the grayish-white tile, since defendant's employee failed to warn plaintiff." However, there is no evidence that anyone working behind the cash register, half an aisle away, saw the sauce at all. There simply is no duty to warn about a condition which one does not know exists.

In any event, a failure to warn does not relieve a plaintiff of her legal obligation to exercise ordinary care for her own safety. The purely speculative testimony cited by the dissent that "*if* someone was stocking the meat counter, they had a clear view of that aisle" adds nothing to our inquiry. Neither does the testimony regarding Kroger employees' conduct *after* the fall contribute to our analysis. Even if we assume Kroger had actual or constructive knowledge of the hazard, the store would still be entitled to summary judgment if Moore knew about the hazard or should have discovered and avoided it, unless Kroger somehow prevented her from discovering it. Id. See *Smith v. Wal-Mart Stores*, 199 Ga. App. 808, 810 (406 SE2d 234) (1991). *Alterman Foods*, supra, established the test for determining whether Moore knew or should have discovered and avoided the hazard created by the spilled sauce. She must "exercise ordinary care for [her] own safety, and must by the same degree of care avoid the [store's] negligence after it becomes apparent to [her] or in the exer-

cise of ordinary care [she] should have learned of it. [She] must make use of all [her] senses in a reasonable measure amounting to ordinary care in discovering and avoiding those things that might cause hurt to [her]." (Citations and punctuation omitted.) Id. at 623. Moore effectively admits that she simply did not exercise ordinary care because her own testimony shows that she completely failed to look to see if the way was clear.

Moore does not claim that the store induced any distraction other than displaying its merchandise on the shelves. This has been held time and again to be a self-induced distraction which does not abrogate a plaintiff's obligation to exercise ordinary care for her own safety. *Riggs v. Great A & P Tea Co.*, 205 Ga. App. 608, 609 (423 SE2d 8) (1992); *Harper v. Kroger Co.*, 212 Ga. App. 570, 571 (443 SE2d 7) (1994); *Piggly Wiggly Southern v. Weathers*, 216 Ga. App. 12, 14 (453 SE2d 74) (1994). The record before us shows that Moore failed to exercise ordinary care for her own safety when she did not discover and avoid a clearly visible hazard presented by the sauce on the floor. The undisputed evidence before the trial court demanded its conclusion that the proximate cause of the fall was Moore's own failure to exercise ordinary care to discover and avoid an obvious hazard. On the record before it and before us, the trial court was required to grant summary judgment in Kroger's favor. *Minor v. Super Discount Markets*, 211 Ga. App. 123, 124-125 (438 SE2d 384) (1993); *Colevins v. Federated Dept. Stores*, 213 Ga. App. 49, 52 (443 SE2d 871) (1994); *Bruno's, Inc. v. Pendley*, 215 Ga. App. 108 (449 SE2d 637) (1994); *Baker v. Winn-Dixie &c.*, 219 Ga. App. 513 (465 SE2d 710) (1995).

Summary judgment is a tool which should be used most carefully and, obviously, only when the record demands judgment as a matter of law. It is a great injustice for a plaintiff to be denied an opportunity to present her issues to a jury for determination where a record does not demand judgment for a defendant; but it is an equally great injustice to deny summary judgment to a defendant, putting him to the expense and risk of a trial, where, as here, the record does demand judgment in its favor as a matter of law.

*Judgment affirmed. Beasley, C. J., Birdsong, P. J., Pope, P. J., Andrews, Blackburn and Smith, JJ., concur. Ruffin, J., concurs specially. McMurray, P. J., dissents.*

RUFFIN, Judge, concurring specially.

Slip and fall cases continue to come to us with baffling regularity. Indeed, one is tempted to ask: "How many ways can one slip and fall?" The problem arises not from the myriad ways to slip and fall, but, rather, from our inconsistent application of certain stale principles.

Our law in slip and fall cases is so confusing that it places both

plaintiffs and defendants in the untenable and unenviable position of having to choose between the disastrous and the despicable. Indeed, this area of the law, more than any other, may constitute the enigma of our time. As we strive for strength in the struggle, our goal should be not only to reach a just and fair result, but also to eliminate confusion and bring some predictability to this troublesome area.

Although I concur in the majority's opinion, I write separately to address what I believe to be the appropriate boundaries of summary judgment in a "foreign substance" slip-and-fall such as this one and to clarify the proper analysis to be applied.

1. The dissent refers to a "comparative negligence analysis" to determine whether Kroger or Moore proximately caused Moore's injury. The proper test on a proprietor's motion for summary judgment, however, is a two-part determination of the parties' *knowledge* of the foreign substance. The *separate* issues are 1) whether the proprietor had actual or constructive knowledge of the foreign substance and 2) whether the plaintiff did not know of the foreign substance and, exercising ordinary care, would not have discovered the foreign substance in time to avoid it. *Alterman Foods v. Ligon*, 246 Ga. 620, 623 (272 SE2d 327) (1980); *Piggly Wiggly Southern v. Brown*, 219 Ga. App. 614 (468 SE2d 387) (1995); *Smith v. Wal-Mart Stores*, 199 Ga. App. 808 (406 SE2d 234) (1991). The proprietor is entitled to summary judgment if he can show, without question of fact, *either* his lack of actual or constructive knowledge *or* the plaintiff's actual or imputed knowledge. *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991). In this analysis, the court does not compare *negligence*; it compares *knowledge*. A plaintiff may prevail only by showing the proprietor knew (or was deemed to know) of the danger and he did not know (and was not legally deemed to know) of it.

2. Although the test is simple in appearance, it is difficult in application. In this case, however, Moore admitted she could have seen the orange colored substance on the "off-white" floor halfway down the aisle and, indeed, alleged the cashier could have seen it from the opposite end of the aisle. Although she had her hands full, and her attention was focused on the shelves of pasta sauce, she said she was not distracted and nothing prevented her from looking down. Under the narrow facts of this case — especially the apparent visibility of the orange spill — and the precedents cited by the majority holding that merchandise on shelves is no distraction, Kroger has pierced the second element of the test and has shown Moore should have discovered the danger.

Moore's case fails because she was unable, as a matter of law, to show she exercised ordinary care for her own safety and thus had no reason to know of the danger she encountered. See *Lau's Corp.*, supra. At the same time, the evidence she presented in opposition to

Kroger's motion shows the difficulty of these cases. Like that of many shoppers, Moore's attention was consumed by the load of groceries in her arms and by her search for a specific product on the shelves.

By creating a flat rule and policy that these facts do not excuse her failure to watch the floor, we have denied Moore the ability to present that explanation to a jury of her peers. We should question that policy, recalling that "[t]he Summary Judgment Act does not authorize the trial [or appellate] court[s] to sit as both judge and jury, weighing the evidence and deciding issues that are traditionally for the jury." (Citations and punctuation omitted.) *Haire v. City of Macon*, 200 Ga. App. 744, 747 (409 SE2d 670) (1991). Moreover, that policy is a relic that should be relaxed because it contradicts reality. We have, in effect, ruled Moore's evidence to have no weight. In light of the Georgia Supreme Court's ruling in *Barentine v. Kroger Co.*, 264 Ga. 224, 225 (443 SE2d 485) (1994), in which the court considered the surrounding circumstances in determining whether the plaintiff exercised due care, it is time to reconsider the hard and fast rules we have made for determining what does and what does not constitute "ordinary care." See *Dill's Food City v. Johnson*, 219 Ga. App. 654 (466 SE2d 250) (1995); *McDonald's Restaurants of Ga. v. Banks*, 219 Ga. App. 667 (466 SE2d 240) (1995).[1] Accordingly, I reluctantly join in the court's opinion only because I feel constrained by current authority to do so.

McMurray, Presiding Judge, dissenting.

I respectfully dissent from the affirmance of summary judgment to the defendant proprietor in this case, as my review of the record indicates that defendant itself adduced the evidence indicating one of its employees was in a position to discern the hazard and warn the patron of any risk of injury. Consequently a jury question is presented as to whether plaintiff's *comparative negligence* in failing to observe the hazard outweighs the negligence of defendant in failing to warn of or remove that hazardous spill.

Plaintiff Janice S. Moore brought this tort action against defendant, The Kroger Company, seeking to recover for personal injuries sustained when she slipped and fell due to a foreign substance on the floor of defendant's grocery, "which substance [allegedly] was clearly visible to store employees, the same constituting a dangerous and defective condition." Defendant denied the material allegations and, after a period of discovery, moved for summary judgment on the ground that "plaintiff failed to exercise ordinary care for her own

---

[1] While both *Barentine* and *Banks* involved clear liquid on the floor, they show the use of a "totality of the circumstances" test in determining whether a plaintiff exercised ordinary care for his or her own safety.

safety." In support of this contention, defendant relied on plaintiff's deposition testimony affirming that the hazardous substance "could have been a type of pasta sauce with chunks of vegetables in it[.]" Plaintiff intended to make lasagna, and she was carrying "two pounds of meat, a loaf of bread, and [about two pounds of mozzarella] cheese[.]" The floor tile in this store was "grayish-white or off white." Plaintiff confirmed that, "[i]f [she] had been looking down, [she could] have seen the orange substance on the floor[; . . . that there was not] anything in the aisle preventing [plaintiff] from seeing the floor or looking down[; . . . and that there was not] anything distracting [her] as [she was] walking down the aisle[.]"

In opposition, plaintiff explained that she "[c]ame into the store [wearing flat shoes], went past the vegetable/bread aisle, past the meat case to get the meat for the lasagna, came up the pasta aisle, and then . . . fell," hurting her knee. "The substance that was in the floor . . . was orangish-red in color and kind of mushy, like some chewed-up vegetable or carrot or whatever." After she fell, from her position "on the floor, [plaintiff noticed the spilled matter] was in two spots," about 12 inches apart. "It wasn't like a blob. It was a smear in the floor." In light of this testimony, I do not accept defendant's characterization of an " 'orangish-red' substance on the floor that was smeared *over* a 12 inch area." (Emphasis supplied.) When cross-examined by defendant, plaintiff affirmed that "it was clearly visible to a Kroger employee[.]" Plaintiff specifically testified "the cashier, she had a clear view down that aisle. Also, in the back of the store, the meat counter, if someone was stocking the meat counter, they had clear view of that aisle." Next, after plaintiff fell, "[t]he cashier yelled out, 'A lady just fell in [the] aisle'. . . ." Two "Kroger employees, a male and a female, walked down the aisle." The female employee told the male employee to "clean that up. He . . . got a bucket and a mop and he came back. . . . And [plaintiff] was there when he wiped it up." Plaintiff also testified, "that little fellow that was running around that mopped up the stuff, that was his job to clean the aisles, so I feel like he didn't check the aisle." When asked, "if you had been looking down, it would have also been visible to you? [plaintiff answered,] I'm not sure of that. . . . If I had been walking with my head down, probably so. I do not — that's not my practice in walking. There was no reason for me to look down that day in the store. I was interested in what was on the shelves."

Plaintiff enumerates the grant of summary judgment as error, contending that factual issues remain as to whether she failed to exercise ordinary care for her own safety, and whether, *under a comparative negligence analysis*, defendant's negligence caused plaintiff's injuries in whole or in part. I agree.

"When an action is based on constructive knowledge, to avoid

summary judgment for the defendant, the plaintiff must establish a question of fact whether the foreign substance remained on the floor for a sufficient length of time for knowledge of it to be imputed to the proprietor, showing that he had an opportunity to discover the defect and correct it. *Smith v. Wal-Mart Stores*, 199 Ga. App. 808 (406 SE2d 234) (1991). This may be done by showing that employees of the proprietor were in the area and easily could have seen the hazard and corrected it. · . . . *Queen v. Kroger Co.*, 191 Ga. App. 249-250 (1) (381 SE2d 413) (1989)." *Smith v. Winn-Dixie Atlanta*, 203 Ga. App. 565 (417 SE2d 202). Accord *Alterman Foods v. Ligon*, 246 Ga. 620, 622 (272 SE2d 327), citing *Winn-Dixie Stores v. Hardy*, 138 Ga. App. 342 (226 SE2d 142) and *Sharpton v. Great A & P Tea Co.*, 112 Ga. App. 283 (145 SE2d 101).

When the evidence, including all favorable inferences, is viewed in the light most favorable to plaintiff as the non-movant, the jury would be authorized to find that defendant may be charged with knowledge of the hazard. This is established by the presence of its cashier, who was in a position to *warn* plaintiff even if she could not leave her register to clean up the spill herself. She also could have informed a coworker to attend to the spill. See, e.g., *Food Lion v. Williams*, 219 Ga. App. 352 (1), 354 (464 SE2d 913) (motion for directed verdict correctly denied when employee failed to warn that patron of spilled water). "Thus, the only question remaining is whether [plaintiff] had equal knowledge of the alleged . . . hazard, i.e., did she exercise ordinary care for her own safety?" *Axom v. Wendy's Intl.*, 219 Ga. App. 623, 625 (466 SE2d 613). In the case sub judice, plaintiff's hands were full of items she intended to purchase from defendant's establishment and her attention was directed to items on the shelves as she focused on the purpose of her trip, purchasing a particular brand of sauce. The evidence would further authorize the jury to conclude that plaintiff did not *necessarily* fail to exercise ordinary care for her own safety, even though she did not notice the smeared orange substance against the grayish-white tile, since defendant's employee failed to warn plaintiff. *Dill's Food City v. Johnson*, 219 Ga. App. 654 (466 SE2d 250). "[I] cannot conclude as a matter of law that the plaintiff is barred from recovery merely because she admitted she was not looking at the floor in front of her when she fell. 'Looking continuously, without intermission, for defects in a floor is not required in all circumstances.' *Choatas v. J. P. Allen & Co.*, 113 Ga. App. 731, 733 (149 SE2d 527) (1966)." *Fletcher v. Family Center*, 169 Ga. App. 376, 377 (2) (312 SE2d 856). "In [my] view, the case sub judice is therefore controlled favorably to plaintiff-invitee . . . by the rationale employed in such recent whole court decisions as *Jackson v. Camilla Trading Post*, 218 Ga. App. 164, 167 (460 SE2d 849) [cert. denied] and *Dept. of Human Resources v. Thomas*, 217 Ga. App. 174

(1) (a), 176 (456 SE2d 724), cert. denied. In each of those cases, a majority of this Court agreed that the question whether a plaintiff failed to exercise ordinary care on her own behalf, because she *should* have seen the hazardous foreign substance that she claimed she *did* not see, was for the jury to determine." *Dill's Food City v. Johnson*, 219 Ga. App. 654, 656, supra. In the case sub judice, the trier of fact might very well find that defendant should have seen the spilled orange substance, or might conclude that defendant's employees could not reasonably have seen the spill to warn plaintiff because they were concentrating on other duties. "The customer must exercise ordinary care for his own safety, and must by the same degree of care avoid the effect of the merchant's negligence after it becomes apparent to him *or in the exercise of ordinary care he should have learned of it*. He must use all of his senses in a *reasonable* measure amounting to ordinary care in discovering and avoiding those things that might cause hurt to him." (Emphasis supplied; citations and punctuation omitted.) *Alterman Foods v. Ligon*, 246 Ga. 620, 623, supra. But, that ultimate determination, based on the credibility of the witnesses as well as the physical facts, *is for the jury and not for the courts*, except where the circumstances are plain, palpable, and admit of only one reasonable outcome. This is not such a case. " 'Even where there is no dispute as to the facts, it is . . . usually for the jury to say whether the conduct in question met the standard of the reasonable man.' *Wakefield v. A. R. Winter Co.*, 121 Ga. App. 259, 260 (174 SE2d 178) (1970)." *James v. Sears, Roebuck & Co.*, 140 Ga. App. 859 (232 SE2d 274). See also *Cunningham v. Nat. Svc. Indus.*, 174 Ga. App. 832, 836 (331 SE2d 899), and Presiding Judge Birdsong's excellent survey of issues presenting jury questions. "The trial court erred[, in my view,] in granting the defendant's motion for summary judgment based on the evidence of record in this case." *Fletcher v. Family Center,* 169 Ga. App. 376, 377 (2), supra. Since my colleagues in the majority would nevertheless affirm that unwarranted grant of summary judgment, I respectfully dissent.

DECIDED MAY 23, 1996 — 

*Graham G. McMurray*, for appellant.

*Webb, Carlock, Copeland, Semler & Stair, Robert M. Ethridge, Craig A. Brookes*, for appellee.