A97A0085. SHEPARD v. WAL-MART STORES, INC.

(487 SE2d 664)

ANDREWS, Chief Judge.

Mark E. Shepard, Sr. appeals from the trial court's grant of summary judgment to Wal-Mart Stores, Inc. (Wal-Mart) on his negligence claim arising from his fall while shopping at Wal-Mart.

"To prevail at summary judgment under OCGA § 9-11-56, the moving party must demonstrate that there is no genuine issue of material fact and that the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law. OCGA § 9-11-56 (c). A *defendant* may do this by showing the court that the documents, affidavits, depositions and other evidence in the record reveal that there is no evidence sufficient to create a jury issue on at least one essential element of plaintiff's case. If there is no evidence sufficient to create a genuine issue as to any essential element of plaintiff's claim, that claim tumbles like a house of cards. All of the other disputes of fact are rendered immaterial. [Cit.]" (Emphasis in original.) *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991).

In reviewing a grant or denial of summary judgment, this Court conducts a de novo review of the evidence. *Gaskins v. Hand*, 219 Ga. App. 823 (466 SE2d 688) (1996).

The only evidence presented on summary judgment was Shepard's deposition. Viewing that deposition in his favor, the undisputed facts were that he and his wife went to the Wal-Mart between 10:00 and 11:00 a.m. on August 23, 1994. He was going to get a quart of transmission fluid and to check the electrical section for boat trailer pigtail electrical hookups for his brother's Tempo. Upon arriving, the Shepards split up, and he went to get the transmission fluid. Shepard then walked several aisles over to the electrical area, and the pigtail hookups displayed on pegboard caught his eye. The pegboard ran approximately eight feet along the aisle and was five feet deep, with the bottom edge about three and one-half feet off the floor. Not finding the hookup he needed for a Tempo, Shepard then scanned the pegboard in search of a substitute, but did not find one. He spent

from two to five minutes in front of the pegboard and pulled several hookups off the pegboard to see if they were acceptable.

Then, because his wife had to go to work that afternoon and he was "in a hurry," he gave up and went to find his wife. As he stated, "I turned to go on and not get my mind on nothing else, just get on out of there. . . . I made the decision to leave and that's what I meant to do. I just turned to go." He immediately fell and, after falling, realized he had tripped over a trailer hitch carton located on a lower shelf farther down the aisle from the pegboard, as noted by Shepard on a diagram. The carton extended into the aisle about eight inches beyond the other cartons with which it was stacked, and the lid of the carton had been torn open. Asked how many steps he had taken from the time he was looking at the pegboard until he fell, Shepard replied: "It was immediate. It was immediate as much as I can remember. Like I said, it all happened so fast and, . . . , but I know I immediately turned. I reckon I was making the first step whenever it caught my foot. . . . It was immediate."

Having worked in a grocery store, Shepard was also aware of the policy of commercial establishments, including Wal-Mart, to have "safety zone" checks. As he explained, employees are given the responsibility of going around and doing inspections periodically through the day "to make sure things like this is not there." He had previously been in Wal-Mart and heard the direction come over the intercom for "all department heads you now should be in a safety zone defense," which meant they were to check over their assigned areas.

Shepard acknowledged that "[i]f I had turned and looked down, I probably would have seen it, yes. . . . I ain't saying I wouldn't have seen it if I would have looked. If I would have looked I would have probably seen it, but I took for granted that there was not supposed to be nothing there and I guess I took that for granted." Shepard also acknowledged that there was no Wal-Mart employee in the aisle during the time he was examining the hookups or when he fell.

In the pre-trial order Shepard contends that Wal-Mart "was negligent in failing to maintain the premises in a proper manner" and that he "did not see the box prior to his fall because his attention was focused on the pegboard."

In order to prevail on a claim where the plaintiff invitee makes such an allegation, the plaintiff must demonstrate that the defendant had superior knowledge of the foreign substance, i.e., (1) the defendant had actual or constructive knowledge of the foreign substance, and (2) the plaintiff was without knowledge of the foreign object or for some reason attributable to the defendant was prevented from discovering it. *Alterman Foods v. Ligon*, 246 Ga. 620, 623 (272 SE2d 327) (1980); *Columbus Doctors Hosp. v. Thompson*, 224 Ga.

App. 682, 683 (482 SE2d 705) (1997); *Fisher v. HBS Mgmt.*, 220 Ga. App. 752, 753 (469 SE2d 885) (1996).[1]

Here, there is no evidence that a Wal-Mart employee had placed the carton in such a position, nor is there evidence that any employee had actual knowledge of the box extending into the aisle. It is also not disputed, as stated by Shepard, that Wal-Mart had in place a "safety zone" defense program.

Therefore, in the particular context of this case, Shepard has failed to come forth with evidence of any breach of duty by Wal-Mart. *Coffey*, supra at 827; *Jenkins v. Bi-Lo, Inc.*, 223 Ga. App. 735, 736 (479 SE2d 14) (1996); compare *Faulkner v. Home Depot*, 222 Ga. App. 449 (474 SE2d 311) (1996) (sawhorse protruding beneath stacks of landscape timbers placed by Home Depot, summary judgment denied). Shepard's reliance on *Jones v. Braswell Elec.*, 219 Ga. App. 218 (464 SE2d 628) (1995), is of no avail. There, there was no question that defendant Braswell, installing electrical conduit on Jones' work premises, had placed a coiled hose behind Jones' chair. The issue there was, even with a breach of duty by Braswell, whether Jones had exercised ordinary care for her own safety. Because of material disputes of fact, that case was not found appropriate for summary judgment.

Even assuming, without deciding, that Shepard had come forth with enough to create a question of fact regarding Wal-Mart's breach of duty, summary judgment in favor of Wal-Mart was still appropriate.

Shepard acknowledges that he could have seen the box had he only looked, but he was distracted from doing that by the merchandise displayed by Wal-Mart on the pegboard. Compare *Barentine v. Kroger Co.*, 264 Ga. 224 (443 SE2d 485) (1994) (getting cashier's attention to check out may be a "distraction"). Pretermitting the fact that Shepard's own statement is that he had quit looking at the pegboard and decided to go and find his wife, looking at merchandise displayed by a commercial establishment "has been held time and again to be a self-induced distraction which does not abrogate a plaintiff's obligation to exercise ordinary care for [his] own safety. [Cits.]" *Moore v. Kroger Co.*, 221 Ga. App. 520, 522 (471 SE2d 916) (1996). *Harper v. Kroger Co.*, 212 Ga. App. 570, 571 (443 SE2d 7) (1994).

Therefore, summary judgment was properly granted to Wal-Mart.

---

[1] The Supreme Court is currently considering *Robinson v. Kroger Co.*, 222 Ga. App. 711 (476 SE2d 29) (1996), cert. granted, 223 Ga. App. 910. Until the resolution of that appeal, however, we apply the *Alterman* standard. *Coffey v. Wal-Mart Stores*, 224 Ga. App. 824, 827 (482 SE2d 720) (1997).

*Judgment affirmed. Smith, J., and Senior Appellate Judge Harold R. Banke concur.*

DECIDED JUNE 13, 1997.

Before Judge Wilkes.

*Newton, Smith, Durden, Kaufold & Rice, William R. Rice,* for appellant.

*McLain & Merritt, Anthony A. Rowell,* for appellee.